**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., ) | Civil Action No. 1:14-cv-12405-NMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| NEOVASC, INC. and NEOVASC TIARA, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____ ) | |

**MEMORANDUM IN SUPPORT OF NEOVASC, INC.'S AND NEOVASC TIARA, INC.'S
MOTION TO DISMISS CLAIMS FOR CORRECTION OF INVENTORSHIP, FRAUD,
AND UNFAIR AND DECEPTIVE TRADE PRACTICES**

# TABLE OF CONTENTS

**Page**

I.      FACTS ............................................................................................................. 3

    A.      Inventorship ............................................................................................ 3

    B.      Alleged Fraud ......................................................................................... 3

    C.      Alleged Unfair and Deceptive Trade Practices .................................... 4

II.     LEGAL STANDARD .................................................................................... 4

    A.      Motion to Dismiss Under Rule 12(b)(1) ................................................ 4

    B.      Motion to Dismiss Under Rule 12(b)(6) ................................................ 5

III.    ARGUMENT .................................................................................................. 5

    A.      CVT's Claim for Correction of Inventorship Should be Dismissed Under Rule 12(b)(6) .......................................................................................... 5

        1.      Adequately pleading a claim under § 256 requires, at a minimum, the identity of the alleged missing inventor(s) and the alleged inventive contribution ...................................................................... 5

        2.      CVT's threadbare correction of inventorship claim fails to put Neovasc on notice of its claim and, thus, should be dismissed ................ 7

    B.      CVT Lacks Standing to Assert Its Correction of Inventorship Claim ................... 9

        1.      Standing to assert a claim under § 256 requires pleading an "ownership interest" or a "concrete financial interest" in the patent .......... 9

        2.      CVT failed to plead facts sufficient to demonstrate standing ................. 10

    C.      CVT's Claim for Fraud Should be Dismissed Under Rule 12(b)(6) ................... 13

        1.      Rule 9(b) requires CVT to plead with particularity the who, what, where, and when of its fraud claim ........................................................ 13

        2.      CVT failed to plead its fraud claim with particularity ............................. 13

    D.      CVT's Claim Under Mass. Gen. Laws ch. 93A, § 11 Should Be Dismissed ....... 15

        1.      The alleged unfair and/or deceptive acts must have "occurred primarily and substantially within the commonwealth" ........................... 15

        2.      The only reasonable inference based on CVT's pleading is that the alleged unfair and deceptive acts occurred outside Massachusetts .......... 17

IV.     CONCLUSION ............................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S,*
    826 F. Supp. 2d 263 (D.D.C. 2011) ...................................................................9

*Administrators of the Tulane Educational Fund v. Ipsen Pharma, S.A.S.,*
    771 F. Supp. 2d 32 (D.D.C. 2011) .....................................................................9

*Ali v. Carnegie Inst. of Wash.,*
    967 F. Supp. 2d 1367 (D. Or. 2013) ................................................................10

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,*
    374 F.3d 23 (1st Cir. 2004) ..............................................................................13

*Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.,*
    933 F. Supp. 64 (D. Mass. 1996) .....................................................................17

*Arbitron, Inc. v. Kiefl,* No. 09-cv-0413,
    2010 U.S. Dist. LEXIS 83597 (S.D.N.Y. Aug. 13, 2010) .................................8

*Arthur D. Little Int'l, Inc. v. Dooyang Corp.,*
    928 F. Supp. 1189 (D. Mass. 1996) .................................................................17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................5, 7

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,*
    131 S. Ct. 2188 (2011) ....................................................................................11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...............................................................................2, 5, 13

*Burroughs Wellcome Co. v. Barr Labs., Inc.,*
    40 F.3d 1223 (Fed. Cir. 1994) ........................................................................6, 9

*Butler v. Balolia,*
    736 F.3d 609 (1st Cir. 2013) ............................................................................12

*Chou v. Univ. of Chi.,*
    254 F.3d 1347 (Fed. Cir. 2001) ..................................................................10, 12

*Clinton Hosp. Ass'n v. Corson Grp., Inc.,*
    907 F.2d 1260 (1st Cir. 1990) ..........................................................................16

*Compagnie De Reassurance D'Ile De Fr. v. New Eng. Reinsurance Corp.,*
    57 F.3d 56 (1st Cir. 1995) ................................................................................19

*Corcoran v. Saxon Mortg. Servs., Inc.,* No. 09-11468-NMG,
    2010 WL 2106179 (D. Mass. May 24, 2010) .............................................13, 14

*Coyle v. Santucci*, No. 13-11204-DHH,
    2014 WL 298843 (D. Mass. Jan. 24, 2014) ...............................................14, 15

*Datatrend, Inc. v. Jabil Circuit, Inc.*,
    3 F. Supp. 2d 66 (D. Mass. 1997) ...............................................................18, 19

*Den Norske Bank AS v. First National Bank of Boston, N.A.*,
    838 F. Supp. 19 (D. Mass. 1993) .................................................................17, 18

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004).......................................................................6, 8

*Ethicon, Inc. v. United States Surgical Corp.*,
    135 F. 3d 1456 (Fed. Cir. 1998)...........................................................1, 6, 7, 8

*First Security Bank, N.A. v. Northwest Airlines, Inc.*,
    2001 U.S. Dist. LEXIS 26601 (D. Mass. Jan. 3, 2001) ....................................16

*Hardiman v. United States*,
    945 F. Supp. 2d 246 (D. Mass. 2013) ..............................................................4, 5

*Hess v. Advanced Cardiovascular Sys., Inc.*,
    106 F.3d 976 (Fed. Cir. 1997)..............................................................................5

*Informatics Applications Grp., Inc. v. Shkolnikov*, No. 11cv726,
    2011 U.S. Dist. LEXIS 117414 (E.D. Va. Oct. 11, 2011) .................................11

*Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*,
    329 F.3d 216 (1st Cir. 2003)........................................................................15, 16

*Kimberly-Clark Corp. v. Proctor Gamble Distrib. Co.*,
    973 F.2d 911 (Fed. Cir. 1992)..............................................................................6

*Kirtz v. Wells Fargo Bank N.A.*, No. 12-10690-DJC,
    2012 WL 5989705 (D. Mass. Nov. 29, 2012) .........................................13, 14, 15

*Krausz Indus. v. Romac Indus.*, No. C10-1204RSL,
    2011 U.S. Dist. LEXIS 90653 (W.D. Wa. Aug. 15, 2011)..............................11

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,
    781 N.E.2d 787 (Mass. 2003) ...................................................................15, 16

*Larson v. Correct Craft, Inc.*,
    569 F.3d 1319 (Fed. Cir. 2009)...................................................2, 9, 10, 11, 12

*Murphy v. United States*,
    45 F.3d 520 (1st Cir. 1995)...............................................................................4

*Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12-11874-DJC,
    2013 WL 3335022 (D. Mass. July 1, 2013).......................................................1

*Orellana v. Deutsche Bank Nat'l Trust Co.*, No. 12-11982-NMG,
    2013 WL 5348596 (D. Mass. Aug. 30, 2013) ..................................................15

*Ouch v. Fed. Nat'l Mortg. Ass'n*, No. 11-12090-RWZ,
2013 WL 139765, & 1-2 (D. Mass. Jan. 10, 2013)........................................................13

*Paradigm Biodevices, Inc. v. Viscogliosi Bros., LLC*,
842 F. Supp. 2d 661 (S.D.N.Y. 2012)................................................................16, 17, 19

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) .........................................................................................13

*Roche v. Royal Bank of Can.*,
109 F.3d 820 (1st Cir. 1997)...................................................................................18, 19

*Sewall v. Walters*,
21 F.3d 411 (Fed. Cir. 1994).........................................................................................6, 7

*Shukh v. Seagate Tech., LLC*, No. 10-404,
2011 U.S. Dist. LEXIS 33924 (D. Minn. Mar. 30, 2011)..............................................10

*Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs.*,
47 Mass. App. Ct. 154 (Mass. App. Ct. 1999)........................................................15, 16

*Stoneridge Control Devices, Inc. v. Teleflex, Inc.*, No. 02-1554,
2004 Mass. Super. LEXIS 23 (Mass. Super. Ct. Feb. 17, 2014) ...................................18

*Thomson v. Gaskill*,
315 U.S. 442 (1942).........................................................................................................5

*Tingley Sys., Inc. v. CSC Consulting, Inc.*,
152 F. Supp. 2d 95 (D. Mass. 2001) ...............................................................................1

*Uncle Henry's, Inc. v. Plaut Consulting Co.*,
399 F.3d 33 (1st Cir. 2005) ...........................................................................................16

*Vanderbilt Univ. v. ICOS Corp.*,
601 F.3d 1297 (Fed. Cir. 2010)........................................................................................6

*Viqueira v. First Bank*,
140 F.3d 12 (1st Cir. 1998) .............................................................................................4

*Warth v. Seldin*,
422 U.S. 490 (1975).......................................................................................................10

*Yankee Candle Co. v. Bridgewater Candle Co.*,
107 F. Supp. 2d 82 (D. Mass. 2000) .......................................................................16, 17

## STATUTES

35 U.S.C. § 256............................................................................................................5, 6

Mass. Gen. Laws ch. 93A, § 11 ...............................................................................3, 4, 15

**RULES**

Fed. R. Civ. P. 12(b)(1)................................................................................................................4

Fed. R. Civ. P. 9(b) ....................................................................................................................13

Fed. R. Civ. P. 12(b)(6)................................................................................................................5

While Neovasc believes all of CardiAQ Valve Technologies, Inc.'s ("CVT's") claims are without merit, CVT's pleading of three of its claims – correction of inventorship, fraud, and unfair and deceptive business practices under Massachusetts law – is so woefully inadequate that the claims should be dismissed under Rules 12(b)(6) and/or 12(b)(1) of the Federal Rules of Civil Procedure.[1]  CVT's pleading of these claims is nothing but conclusory bluster with a conspicuous absence of supporting facts.

CVT's claim for correction of inventorship under 35 U.S.C. § 256 suffers from two separate and distinct infirmities, each one individually requiring dismissal.

First, CVT has alleged no facts to support its naked conclusion that some unspecified CVT "personnel" should be named as inventors on Neovasc's U.S. Patent No. 8,579,964 ("the '964 patent") in addition to or in place of the two Neovasc employees, Randy Matthew Lane and Colin A. Nyuli, named on that patent.  Invention under patent law is not a mere inkling of an idea or concept, but requires "conception," which is a "definite and firm idea" of the claimed invention.  And it is not easy to qualify as someone who should be named as a joint inventor on a patent.  The law requires clear and convincing evidence that the person contributed inventive ideas to the list of claims in the patent at issue – and what is "inventive" is narrowly defined.  For these reasons, a plaintiff alleging that it should have been included on a patent as an inventor or joint inventor cannot slide by with vague generalizations.  Yet CVT alleges *no* facts regarding conception of the claimed subject matter of any of the '964 patent's 28 claims[2] by the alleged missing inventors and also does not plead facts supporting the collaboration necessary to support

---

[1] Although Neovasc's motion to dismiss is a partial motion to dismiss, Neovasc is not filing an answer to the remaining claims because an answer is not due until after resolution of even a partial motion to dismiss.  *Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12-11874-DJC, 2013 WL 3335022, at *6 (D. Mass. July 1, 2013) (stating a partial motion to dismiss suspends the time to answer the claims not subject to the motion); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 121-22 (D. Mass. 2001) (same).

[2] An inventor must conceive subject matter actually recited in the claims of a patent and not merely described elsewhere in the patent outside of the claims. *Ethicon, Inc. v. United States Surgical Corp.*, 135 F. 3d 1456, 1460 (Fed. Cir. 1998).

its joint inventorship claim.  Indeed, CVT failed to identify the most fundamental fact supporting its claim – the identity of the alleged missing inventor(s).  This failure to plead the heart of CVT's claim – the identity of the alleged missing inventors and what they invented – leaves Neovasc guessing as to the exact claim against it.  CVT's failure to plead even basic facts underlying CVT's baseless inventorship claim is, in Neovasc's view, intentional because no such facts exist.  Thus, the Court should dismiss this claim under Rule 12(b)(6).

Second, CVT also failed to allege that it has any financial interest in the '964 patent even if its unsupported inventorship claims had merit, which they do not.  The Federal Circuit has held that standing to make a § 256 claim requires either an "ownership interest" or a "'concrete financial interest'" in the patent at issue.  *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326 (Fed. Cir. 2009).  And under U.S. law, an inventor – not the inventor's employer – has the ownership interest in an invention unless that interest is assigned.  Thus, even if there were missing inventors, which there are not, it is the inventors, not CVT, that would have an interest in the '964 patent.  CVT does not allege that the alleged missing inventors assigned their interests in the '964 patent, assuming the alleged missing inventors have an interest, to CVT.  Because CVT itself failed to plead any ownership or financial interest in the '964 patent, it lacks standing, and its claims should be dismissed under Rule 12(b)(1).

CVT similarly failed to support its fraud claims with facts identifying the who, where, and when of its claim, as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Nowhere does CVT identify the person(s) who allegedly made the fraudulent statements, much less when the alleged statements were made, to whom, and in what manner.  Thus, Neovasc is left guessing as to the exact nature of the claim against it and the basis for that claim.  In holding a claim inadequately pleaded, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) specifically warned against this slipshod pleading.  *Id.* at 569 n.14.  Specifically, *Twombly* explained that claims based on fraud pose "a high risk of abusive litigation," which explains Rule 9(b) particularized pleading requirements.  *Id.*  CVT's claim is manifestly deficient in meeting Rule 9(b)'s heightened pleading standard and should be dismissed.

Finally, CVT's pleads its unfair and deceptive business practices claims under Mass. Gen. Laws ch. 93A, but it is clear that the statute cannot apply. Under Chapter 93A, the alleged unfair and/or deceptive acts must have "occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. Yet it is clear from CVT's pleading that the alleged bad acts occurred almost entirely, if not entirely, outside Massachusetts. Indeed, the gravamen of CVT's unfair and deceptive business acts claims – that Neovasc allegedly used CVT confidential information to develop its Tiara device and filed related patent applications – would necessarily had to have occurred, if at all, at Neovasc's headquarters in Richmond, British Columbia. Thus, CVT has failed to state a claim under Chapter 93A.

## I.   FACTS

### A.   Inventorship

CVT's claim for correction of inventorship under 35 U.S.C. § 256 spans four paragraphs, two of which incorporate facts and claim entitlement to relief. Compl. at ¶¶ 31-34. Nowhere does CVT identify the allegedly missing inventor(s) or describe anything about their alleged contributions to the '964 patent. CVT also fails to allege what, if any, financial interest CVT has in the '964 patent even if the unnamed alleged inventors are, in fact, "true and actual inventors."

### B.   Alleged Fraud

CVT's claim for "fraud" is set forth in paragraphs 47-55 of the complaint. Stripped of conclusions, there is little, if anything, left to support CVT's fraud claim. Most importantly, CVT does not allege who at Neovasc made the allegedly fraudulent statements, when these allegedly fraudulent statements were made (other than after CVT and Neovasc first made contact), and where the allegedly fraudulent statements were made (*e.g.*, in an email, during a meeting, on a call). In addition, CVT does not indicate what type of fraud claim is being asserted, *e.g.*, fraudulent misrepresentation, fraud in the inducement, and fraudulent concealment. For example, CVT's sets forth a number of the allegations CVT contends to be fraudulent in paragraph 48. Those allegations include alleged representations by Neovasc to CVT that Neovasc's "products were the Reducer Stent and pericardial tissue products" and that

Neovasc "would treat CardiAQ as a 'partner' . . . ." Compl. at ¶ 48.   While CVT states that these "representations" were "false," the explanation of falsity focuses on Neovasc competing with CVT.   Yet CVT never claims that Neovasc affirmatively represented that it would never compete with CVT.   Thus, it is not clear how this relates to the alleged falsity of the allegations.

### C.     Alleged Unfair and Deceptive Trade Practices

CVT's alleges a claim for "unfair or deceptive act[s] or practice[s]" under Mass. Gen. Laws ch. 93A, § 11 (2014).   Compl. at ¶¶ 65-69.   The claim itself alleges no specific "unfair or deceptive acts or practices" and merely references "aforementioned unfair or deceptive acts or practices," so it is unclear exactly what acts are being relied upon.   *Id*.   To the best of Neovasc's understanding, the "aforementioned acts or practices" are those referred to in the prior claim for alleged misappropriation of trade secrets.   *See id*. at ¶¶ 56-64.   Those "acts or practices" include the allegations regarding "unauthorized disclosure and use of CardiAQ's trade secrets."   *Id*. Presumably the "unauthorized disclosure" refers to Neovasc's filing of a patent application and "unauthorized . . . use" refers to development of Neovasc's Tiara device.   *See id*. at ¶¶ 28-30.

## II.   LEGAL STANDARD

### A.     Motion to Dismiss Under Rule 12(b)(1)

A defendant may move to dismiss an action based on lack of federal subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   In deciding a Rule 12(b)(1) motion, "[t]he district court must construe the complaint liberally, [and treat] all well-pleaded facts as true and draw[ ] all reasonable inferences in favor of the plaintiffs."   *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998).   "A plaintiff, however, may not rest merely on unsupported conclusions or interpretations of law."   *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (citation omitted) (internal quotation marks omitted).   "[C]onclusory descriptions of a general scenario which could be dominated by unpleaded facts will not defeat a motion to dismiss" for lack of subject matter jurisdiction.   *Id.* (emphasis omitted) (citation omitted) (internal quotation marks omitted). Furthermore, "[b]ecause federal courts are courts of limited jurisdiction, federal jurisdiction is never presumed."   *Viqueira*, 140 F.3d at 16.   "Once a defendant challenges the jurisdictional

basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction." *Hardiman v. United States*, 945 F. Supp. 2d 246, 250 (D. Mass. 2013) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

### B.      Motion to Dismiss Under Rule 12(b)(6)

A defendant may move to dismiss an action based on a failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  While "a court must accept a complaint's allegations as true", this tenet is applicable only to facts, not to mere conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by . . . conclusory statements, [no longer] suffice" to withstand a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Id.* at 678.  While "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of the prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678-79. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'"  *Id.* at 679 (citation omitted).

## III.     ARGUMENT

### A.      CVT's Claim for Correction of Inventorship Should be Dismissed Under Rule 12(b)(6)

#### 1.      Adequately pleading a claim under § 256 requires, at a minimum, the identity of the alleged missing inventor(s) and the alleged inventive contribution

"'The inventors as named in an issued patent are presumed to be correct.'"  *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (citation omitted). Nonetheless, Section 256 allows for the correction of inventorship of an issued patent:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error. . . .  The

court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256(a)-(b).  A party alleging non-joinder of an inventor, as CVT does here, "must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004).

"Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). "'Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Ethicon, Inc.*, 135 F.3d at 1460 (citation omitted) (internal quotation marks omitted); *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994) ("Conception exists when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is known."). The inventor's idea must be "definite and permanent enough that one skilled in the art could understand the invention." *Burroughs Wellcome*, 40 F.3d at 1228. "The conceived invention must include every feature of the subject matter ***claimed*** in the patent." *Ethicon, Inc.*, 135 F. 3d at 1460 (emphasis added).

In order to be a joint inventor, which CVT alleges (Compl. at ¶ 32 ("jointly invented")), "there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Kimberly-Clark Corp. v. Proctor Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992). "[C]ollaboration and joint behavior" has always been a "primary focus" of joint inventorship. *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010). "The interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception." *Id*.

Even what may appear at first blush to be substantial contributions are not necessarily inventive. *Ethicon* provides non-exclusive examples of non-inventive activity: (1) "one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed

invention"; (2) "[o]ne who simply provides the inventor with well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole does not qualify as a joint inventor"; and (3) "depending on the scope of a patent's claims, one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses that embodiment to satisfy the best mode requirement." *Ethicon*, 135 F.3d at 1460 (citations omitted).

**2.    CVT's threadbare correction of inventorship claim fails to put Neovasc on notice of its claim and, thus, should be dismissed**

CVT sets forth its correction of inventorship claim in four short paragraphs nearly devoid of facts. Compl. at ¶¶ 31-34. Indeed, CVT's alleges without explanation that "[t]he '964 Patent discloses and claims inventions conceived and/or jointly invented by CardiAQ personnel" and that "Randy Mathew Lane and Colin A. Nyuli are the only named inventors of the patentable subject matter disclosed and claimed in the '964 Patent." Compl. at ¶¶ 32-33. This threadbare recitation fails to allege facts supporting the elements of a § 256 claim, much less provide facts that put Neovasc on notice of its claim. *See Iqbal*, 556 U.S. at 678 (holding that "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" (citation omitted)).

Most importantly, CVT fails to identify the alleged missing inventor(s). The closest CVT comes is alleging that unnamed "CardiAQ personnel" should be named as inventors, but CVT never identifies these alleged missing inventor(s). Compl. at ¶ 32. CVT's complete failure to provide this most basic information – *who* should be listed as inventors – makes it impossible for CVT to adequately plead facts supporting its claim and leaves Neovasc guessing as to the claim against it. While CVT's failure to identify the allegedly missing inventors standing alone requires dismissal under Rule 12(b)(6), CVT's pleading is deficient in other ways as well.

As explained above, "[c]onception exists when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is known." *Sewall*, 21 F.3d at 415. And the contribution of an individual must be weighed against

the invention as a whole to determine whether the contribution was, in fact, inventive. *Eli Lilly.*, 376 F.3d at 1359 ("Contributions to realizing an invention may not amount to a contribution to conception [in some circumstances].").  Thus, conception, and invention by extension, is not merely participating in a meeting, following instructions, or tossing out an idea.  *See, e.g.*, *Ethicon*, 135 F. 3d at 1460.  More is required.

CVT says ***nothing*** about the alleged contribution to the '964 patent that the allegedly missing anonymous inventor(s) made.  Specifically, CVT does not identify what portion of the subject matter claimed in the '964 patent was allegedly conceived by the alleged missing inventor(s).  Thus, not surprisingly, CVT also does not provide any details about the conception of that subject matter, such as when it occurred, who was involved, and how it came about.

CVT's allegation of joint inventorship is even more deficient because CVT does not identify the subject matter allegedly conceived jointly and who was involved.  As noted above, joint inventorship requires some element of collaboration and a significant contribution weighed against the invention as a whole.  *Eli Lilly*, 376 F.3d at 1359.  CVT does not identify the collaboration that allegedly resulted in something inventive, or facts that demonstrate that the alleged contribution was significant enough, and not merely prosaic, to warrant an award of inventorship.  While CVT alleges that discussions took place between Neovasc and CVT personnel, these general allegations fail to provide any details about what, specifically, was disclosed by CVT during these exchanges and how that unidentified subject matter is tied to what is claimed in the '964 patent.  Courts have dismissed as inadequate inventorship claims supported by even more facts than those marshaled by CVT.

*Arbitron, Inc. v. Kiefl*, No. 09-cv-0413, 2010 U.S. Dist. LEXIS 83597 (S.D.N.Y. Aug. 13, 2010) observed that an inventorship determination requires deciding "whether a contribution is significant when compared to the conception of the invention as a whole." *Id*. at *19.  Even though the alleged coinventor pleaded some facts describing what was allegedly conceived, the court held that those facts did not permit a conclusion that the alleged contribution was sufficiently significant even if accepted as true. *Id*. at *20.

Similarly, *Administrators of the Tulane Educational Fund v. Ipsen Pharma, S.A.S.*, 771 F. Supp. 2d 32 (D.D.C. 2011) addressed a motion to dismiss an inventorship claim based on failure to plead facts sufficient to show either sole or joint conception.  Even though the pleading at issue recited extensive facts related to the alleged conception, the court held that "these allegations do not allege the level of conception necessary to state a claim for sole inventorship" because the facts did not permit an inference that the alleged idea was "'so clearly defined' that it could be reduce[d] to practice without extensive research."  *Id.* at 38 (quoting *Burroughs Wellcome*,  40 F.3d at 1228); *see also Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S*, 826 F. Supp 2d 263, 266 (D.D.C. 2011) (dismissing later claim based on same rationale).  Thus, the court dismissed the claim for sole inventorship.  *Ipsen Pharma II*, 826 F. Supp. 2d at 266. The court also dismissed a joint inventorship claim because the alleged discussions between the joint inventors consisted of nothing "more than discussions on the current state of the art" and did not describe an inventive contribution.[3]  *Ipsen Pharma I*, 771 F. Supp. 2d at 39.

Here too, CVT failed to allege sufficient facts regarding conception and joint inventorship and, in fact, CVT pleaded even less relevant facts than in *Arbitron* and *Tulane*. Thus, CVT's § 256 claim should be dismissed.

**B.      CVT Lacks Standing to Assert Its Correction of Inventorship Claim**

As a distinct pleading failure, CVT fails to allege that it (rather than its employees or contractors, who are not parties) has a sufficient interest in the alleged joint invention such that it could have standing to contest patent inventorship.

**1.      Standing to assert a claim under § 256 requires pleading an "ownership interest" or a "concrete financial interest" in the patent**

"Whether the plaintiff has Article III standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'"  *Larson*, 569 F.3d at 1325

---

[3] One claim for joint inventorship was not dismissed because the court held that the alleged discussions were sufficient to demonstrate potential joint inventorship.  *Ipsen Pharma I*, 771 F. Supp. 2d at 39.

(quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).   The Federal Circuit has held that "a plaintiff seeking correction of inventorship under § 256 can pursue that claim in federal court only if the requirements for constitutional standing — namely injury, causation, and redressability — are satisfied." *Larson*, 569 F.3d at 1326.   Standing to make a § 256 claim requires either an "ownership interest" or a "'concrete financial interest'" in the patent at issue. *Id.*; *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1356 (Fed. Cir. 2001).   Thus, an alleged inventor that would be entitled to royalties and stock if named as an inventor was held to have standing (*Chou*, 254 F.3d at 1359), but not an alleged inventor that assigned away the alleged rights to the invention (*Larson*, 569 F.3d at 1327).

The Federal Circuit suggested in *Chou* that a "reputational interest" may be sufficient to confer standing on an alleged inventor lacking a financial stake in a patent.  *Id.* at 1359.   Yet *Chou* did not resolve this question, and it remains unanswered by the Federal Circuit.  *Id.*; *Larson*, 569 F.3d at 1328  ("[W]e need not answer the question we left open in *Chou* — whether a purely reputational interest is sufficient to confer standing for a § 256 claim.").   Thus, courts routinely remark that a plaintiff asserting a claim under § 256 "must allege facts sufficient to show an 'ownership interest' or a 'concrete financial interest' in the patent in question."  *Shukh v. Seagate Tech., LLC*, No. 10-404, 2011 U.S. Dist. LEXIS 33924, at *14 (D. Minn. Mar. 30, 2011) (quoting *Larson*, 569 F.3d at 1324-26); *see also Ali v. Carnegie Inst. of Wash.*, 967 F. Supp. 2d 1367, 1380-81 (D. Or. 2013).

## 2.     CVT failed to plead facts sufficient to demonstrate standing

CVT's claim for correction of inventorship of the '964 patent under 35 U.S.C. § 256 must be dismissed because CVT has failed to plead an "ownership interest" or a "concrete financial interest" in the patent in question.  *Larson*, 569 F.3d at 1326-27.   Critically, however, CVT failed to allege it has any financial interest in the '964 patent.

CVT does plead that certain unidentified "CVT personnel" "conceived and/or jointly invented" unidentified subject matter claimed by the '964 patent.   Compl. at ¶ 32.   Likewise, CVT claims that the inventors that are listed on the '964 patent "are not the only individuals who

invented the subject matter claimed therein." *Id.* at ¶ 33.  The fact that CVT alleges that its "personnel" should be named as inventors does not cure CVT's defective pleading.

While an inventor can assign rights to his patent, "[t]he general rule under U.S. patent law is that 'rights to an invention belong to the inventor.'"  *Krausz Indus. v. Romac Indus.*, No. C10-1204RSL, 2011 U.S. Dist. LEXIS 90653, at *8-9 (W.D. Wa. Aug. 15, 2011) (quoting *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 131 S. Ct. 2188, 2190 (2011)).  Thus, "[w]hether an employer has standing to assert a Section 256 claim and have its employee named an inventor of a patent often turns on whether the employee has assigned his putative ownership rights in the patent to the employer." *Informatics Applications Grp., Inc. v. Shkolnikov*, No. 11cv726, 2011 U.S. Dist. LEXIS 117414, at *13 (E.D. Va. Oct. 11, 2011).  In the absence of any evidence of an assignment, the only possible inference is that it would be the alleged missing inventors, not Neovasc, that would have an ownership interest in the '964 patent if they were, in fact, inventors.  CVT has not alleged that the anonymous alleged inventor(s) assigned any interest in the '964 patent, much less assigned any interest to CVT.  Thus, CVT failed to plead facts sufficient to demonstrate that it has standing to assert its § 256 claims.  *See Shkolnikov*, 2011 U.S. Dist. LEXIS 117414, at *13 (dismissing § 256 claim for lack of standing where lack of assignment meant no ownership rights would flow to claimant from correction).

*Larson* is instructive on this point.   The alleged coinventor in that case, Larson, "affirmatively transferred title to the patents to Correct Craft, and he stands to reap no benefit from a preexisting licensing or royalties arrangement."   569 F.3d at 1326.  The only way for Larson to obtain any interest in the patents was to prevail on claims seeking rescission of the assignments to Correct Craft.  *Id*. at 1326-27.  The Federal Circuit held that this contingent interest was not enough to create standing.  *Id*. at 1326.  "Because Larson lacks an ownership interest, and because being declared the sole inventor will not generate any other direct financial rewards as in Chou, Larson has no constitutional standing to sue for correction of inventorship in federal court."  *Id*. at 1327.  CVT has even less interest than Larson because CVT failed to allege

any financial interest in the '964 patent, whether present or contingent.   Thus, CVT lacks standing, and its § 256 claim should be dismissed.

CVT may argue that it has a "reputational interest" in the '964 patent sufficient to confer standing.  This argument fails for at least two reasons.

First, CVT did not plead any reputational interest in the '964 patent.  The Federal Circuit addressed an argument in *Larson* that a "reputational interest" in the patent at issue conferred standing.  *Id*. at 1327.  But the party seeking correction of inventorship, Larson, like CVT, did not plead any reputational interest.  *Id*.  Thus, the Federal Circuit concluded that "Larson claims no reputational injury, and so that ***cannot be a basis on which to find standing***."  *Id*. at 1328 (emphasis added).  Here too, CVT cannot rely on a "reputational interest" to create standing.  *See Butler v. Balolia*, 736 F.3d 609, 611 (1st Cir. 2013) (explaining that motion to dismiss must be based only on facts in complaint and documents incorporated by reference, matters of public record, and  facts susceptible to judicial notice).

Second, CVT cannot allege that it has a reputational interest in having additional inventors, which would necessarily not be CVT itself, added to the '964 patent.  The Federal Circuit has stated that a "reputational interest" ***may*** be sufficient to confer standing without conclusively resolving the question.  *Chou* justified this possibility by noting that "being considered an inventor of important subject matter is a mark of success in one's field, comparable to being an author of an important scientific paper."  *Chou*, 254 F.3d at 1359.  The reputational interest being described is specific to the individual inventor.  The Federal Circuit has not suggested that a corporation may have a reputational interest sufficient to confer standing based on a reputational interest of its employees.  Thus, any argument that CVT has standing based on a "reputational interest" expands the mere possibility identified by the Federal Circuit into uncharted waters.  And even if CVT had pleaded facts alleging a reputational interest in the '964 patent, any reputational interest by CVT is too remote and attenuated to confer standing.

### C.    CVT's Claim for Fraud Should be Dismissed Under Rule 12(b)(6)

#### 1.    Rule 9(b) requires CVT to plead with particularity the who, what, where, and when of its fraud claim

Claims based on fraud pose "a high risk of abusive litigation." *Twombly*, 550 U.S. at 569 n.14.  Thus, a party making a fraud allegation "must state with ***particularity*** the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added).  This requirement for particularity "the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation."  *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).  In other words, Rule 9(b) requires the pleader "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

#### 2.    CVT failed to plead its fraud claim with particularity

Like its inventorship claim, CVT supported its fraud claim with conclusions rather than facts.  CVT's claim fails to adequately plead any of the who, where, and when of its fraud claim.

CVT does not plead the "who" by failing to identify the specific speakers.  While CVT repeatedly alleges that "Neovasc Inc. represented" various things (*e.g.*, Compl. at ¶ 48), CVT never specifically alleges ***who*** – the actual person – made the allegedly fraudulent representations.  Courts have repeatedly held that identifying a corporation as a speaker does not satisfy Rule 9(b)'s particularity requirement.  For example, *Kirtz v. Wells Fargo Bank N.A.*, No. 12-10690-DJC, 2012 WL 5989705 (D. Mass. Nov. 29, 2012) held that "[a]n allegation that an unnamed employee of the [corporation] made a particular statement simply describes a statement made by an unidentified person at an unnamed place and at an unspecified time is thus patently inadequate under Rule 9(b)." *Id*. at *5 (citation omitted) (internal quotation marks omitted); *see also Ouch v. Fed. Nat'l Mortg. Ass'n*, No. 11-12090-RWZ, 2013 WL 139765, at *1 n.2& 1-2 (D. Mass. Jan. 10, 2013); *Corcoran v. Saxon Mortg. Servs., Inc.*, No. 09-11468-NMG, 2010 WL 2106179, at *5 (D. Mass. May 24, 2010) (stating that Plaintiff's complaint was "woefully

inadequate" because, *inter alia*, Plaintiff alleged that only the corporation, rather than any specific person or persons, made the alleged misrepresentations).

CVT also fails to adequately plead "where" the fraud occurred.  While the complaint is hardly a model of clarity, CVT appears to rely on multiple statements.  *See, e.g.*, Compl. at ¶ 50 ("The **representations** that Neovasc Inc. made were, in fact, false." (emphasis added)).  Yet CVT does not allege where the statements were made, *e.g.*, during a call, in an email, during an in person meeting.  Neovasc and CVT personnel had numerous interactions, so it is impossible to determine based on CVT's allegations where the alleged misrepresentations were made.  This failure to plead with specificity runs afoul of Rule 9(b)'s requirements.  *See, e.g.*, *Coyle v. Santucci*, No. 13-11204-DHH, 2014 WL 298843, at *5 (D. Mass. Jan. 24, 2014) (granting the motion to dismiss under Rule 9(b) because the complaint failed to plead where the allegedly fraudulent representation took place); *Kirtz*, 2012 WL 5989705, at *5-6 (dismissing claim based on, *inter alia*, failing to specify place statement allegedly occurred).

Finally, CVT fails to adequately plead "when" the allegedly fraudulent representations occurred.  CVT simply states that the representations were "[b]eginning in June 2009."  Compl. at ¶ 48.  This allegation adds nothing because, according to the complaint, June 2009 is the very first contact between CVT and Neovasc.  Compl. at ¶ 12.  Thus, this allegation says nothing other than the alleged fraudulent representations were made after the first contact between the companies.  Requiring CVT to plead the "when" of its fraud claim is not a mere formality.  For example, CVT that Neovasc made representations while it "intended to compete" with CVT.  Of course, CVT does not allege that Neovasc affirmatively represented that would never compete with CVT.  Similarly, CVT states that "*[w]hen* Neovasc Inc. made [certain] representations, it knew them to be false. . . ."  Compl. at ¶ 51 (emphasis added).  Without knowing when the alleged representations were made, Neovasc is left hamstrung in defending against these allegations because it is left guessing at the timing, which is fundamental to CVT's claim.  In these circumstances, courts routinely dismiss fraud claims. *Coyle*, 2014 WL 298843, at *5 (granting the motion to dismiss under Rule 9(b) because the complaint failed to plead when the

allegedly fraudulent representation took place); *Orellana v. Deutsche Bank Nat'l Trust Co.*, No. 12-11982-NMG, 2013 WL 5348596, at *10-11  (D. Mass. Aug. 30, 2013) (same); *Kirtz*, 2012 WL 5989705, at *5 (same).

In addition, CVT failed to identify specifically what type of fraud it is alleging.  Thus, Neovasc is left guessing as to whether CVT contends fraud in the inducement, fraudulent concealment, fraudulent misrepresentation, or something else.  Because the elements of these types of fraud differ, CVT's failure to identify the legal principle it relies upon makes it impossible to determine whether CVT adequately pleaded its claim, even setting aside CVT's failure to meet the requirements of Rule 9(b).

In sum, CVT's failed to provide the facts required to plead with particularity its fraud claim, as required by Rule 9(b) and, in fact, failed to identify the legal theory on which it relies.

**D.     CVT's Claim Under Mass. Gen. Laws ch. 93A, § 11 Should Be Dismissed**

**1.     The alleged unfair and/or deceptive acts must have "occurred primarily and substantially within the commonwealth"**

Mass. Gen. Laws ch. 93A, § 11 contains a territorial limitation, such that actions under that statute can only be maintained if the alleged unfair and/or deceptive acts occurred "primarily and substantially within the commonwealth":

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice *occurred primarily and substantially within the commonwealth*. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

Mass. Gen. Laws ch. 93A, § 11 (emphasis added).  Thus, "when 'virtually all the conduct that can be said to be unfair or deceptive' occurs outside the Commonwealth, there can be no Chapter 93A liability."  *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 236 (1st Cir. 2003) (quoting *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 800 (Mass. 2003)).  Courts have speculated that the Legislature may have "had in mind . . .  to improve the moral tone of business in the Commonwealth, but were not interested in trying to

impose our normative standards on other communities, especially when reaching beyond our borders might dampen the enthusiasm of outsiders to trade here." *Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs.*, 47 Mass. App. Ct. 154, 159 (Mass. App. Ct. 1999); *see also First Security Bank, N.A. v. Northwest Airlines, Inc.*, 2001 U.S. Dist. LEXIS 26601, at *16-17 (D. Mass. Jan. 3, 2001) (describing "the Legislature's apparent policy of giving primary emphasis to the policing of behavior of businesses domiciled within Massachusetts").

*Kenda* adopted the "center of gravity" test set forth by the Massachusetts Supreme Judicial Court in *Kuwaiti Danish* to determine whether § 11's territorial limitation is satisfied. *Kenda*, 329 F.3d at 234-35.   The center of gravity test requires a court to look at the facts as a whole to determine whether the alleged tortious conduct occurred "primarily and substantially within" Massachusetts:

> Section 11 suggests an approach in which a judge should, after making findings of fact, and after consid-ering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.

*Id.* at 235 (quoting *Kuwaiti*, 781 N.E.2d at 799).    This test replaced an earlier three-factor test: (1) "where the defendant committed the deceptive or unfair acts or practices"; (2) "where the plaintiff received and acted upon the deceptive or unfair statements"; and (3) "the situs of plaintiff's losses due to the unfair or deceptive acts or practices." *Clinton Hosp. Ass'n v. Corson Grp., Inc.*, 907 F.2d 1260, 1264-66 (1st Cir. 1990).   Nonetheless, the three factors are still relevant considerations, and *Kuwaiti Danish* did not necessarily overrule or supersede earlier cases using the three-factor test. *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir. 2005).   For example, "*Kuwaiti Danish* did not retreat from the proposition that, if the significant contacts of the competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." *Id.*   A claimant "cannot invoke the protection of Chapter 93A on the sole basis that Massachusetts, by being plaintiff's state of domicile, is the place of injury." *Paradigm Biodevices, Inc. v. Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 670 n.5 (S.D.N.Y. 2012) (citing *Yankee Candle Co.*

*v. Bridgewater Candle Co.*, 107 F. Supp. 2d 82, 89 (D. Mass. 2000); *Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.*, 933 F. Supp. 64, 68 (D. Mass. 1996)).

**2.    The only reasonable inference based on CVT's pleading is that the alleged unfair and deceptive acts occurred outside Massachusetts**

CVT's pleading makes clear that most, if not all, the alleged acts giving rise to CVT's unfair and deceptive business practices claim occurred outside Massachusetts and certainly not "primarily and substantially" within Massachusetts.  Instead, the alleged tortious conduct would have necessarily occurred almost exclusively in Richmond, British Columbia, if it had occurred at all, and any injury would be felt by CVT at its present location, Irvine, California.

The heart of CVT's claim appears to be that Neovasc allegedly improperly used CVT confidential information.  Because Neovasc is located in British Columbia, any improper use of confidential information would have necessarily occurred there.  Any loss resulting from this alleged conduct would necessarily be felt by CVT at its present place of business, California. *See Paradigm*, 842 F. Supp. 2d at 670 ("Massachusetts, by being plaintiff's domicile, was also the situs of plaintiff's injury"); *Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 928 F. Supp. 1189, 1208 (D. Mass. 1996) ("The second and third [*Clinton*] factors, however, weigh heavily against [claimant] as it has no office in Massachusetts.").  CVT alleges that disclosure of confidential information continued well after its move to California.  Compl. at ¶ 22.  But even if some portion of the alleged trade secret misappropriation occurred before CVT's California relocation, any harm could not occur before Neovasc made known its mitral valve prosthesis development efforts, which occurred after CVT was located in California.  Compl. at ¶¶ 16-18.  That is, CVT could not suffer any harm before Neovasc attempted to capitalize on its development efforts, *e.g.*, obtain funding or solicit partners.  Certainly, CVT alleges that it did not learn of the alleged tortious conduct until it was in California.  *E.g.*, Compl. at ¶¶ 27-30; *Den Norske Bank AS v. First National Bank of Boston, N.A.*, 838 F. Supp. 19, 30 (D. Mass. 1993) (relying on location where claimant learned of allegedly tortious conduct).  Thus, the conduct surrounding the crux of CVT's claim has little to no connection with Massachusetts.

Another of CVT's claims is that Neovasc obtained a patent that alleged should list CVT personnel as inventors. Compl. at ¶¶ 32-33. That patent is based on applications, the earliest of which was filed on May 5, 2010. Compl. at ¶ 29. This has two important effects for the Section 11 analysis. First, the alleged tortious conduct – filing a patent application without naming CVT personnel – cannot be said to have occurred in Massachusetts. That is so because Neovasc is located in Richmond, British Columbia, and directed its attorneys in California to file the patent application. No acts related to Neovasc's filing the applications that resulted in the patent at issue occurred in Massachusetts. Second, because the application was filed well *after* CVT left Massachusetts, any injury suffered by CVT would be felt in California, not Massachusetts. Thus, under the *Clinton* three-factor test, the only two relevant facts, the first and third, point away from Massachusetts. And under the center of gravity test, the result is no different.

CVT also claims that Neovasc made misrepresentations to CVT. Yet CVT does not state when and how these alleged misrepresentations occurred (*see supra* at Section III(C)(2)). Regardless, the alleged misrepresentations would have necessarily originated in British Columbia. *See Den Norske Bank AS*, 838 F. Supp. at 29 (explaining that alleged tortious "[c]orrespondence originated [outside Massachusetts]"); *Stoneridge Control Devices, Inc. v. Teleflex, Inc.*, No. 02-1554, 2004 Mass. Super. LEXIS 23, at *20-21 (Mass. Super. Ct. Feb. 17, 2014) (finding that alleged tortious conduct occurred outside Massachusetts based on actions of defendant acting outside Massachusetts). Thus, based on the complaint, it is impossible to conclude that the alleged misrepresentations "occurred primarily and substantially" in Massachusetts. In addition, while CVT frames its claim in terms of misrepresentations, the allegations are largely based on Neovasc allegedly failing to disclose to CVT that it was developing a prosthetic mitral valve, *i.e.*, non-disclosure. *E.g.*, Compl. ¶¶ 22-23, 48-50. "[N]on-disclosure occurs where the defendant who fails to disclose is located. This was obviously Canada." *Roche v. Royal Bank of Can.*, 109 F.3d 820, 830 (1st Cir. 1997); *see also Datatrend,*

*Inc. v. Jabil Circuit, Inc.*, 3 F. Supp. 2d 66, 78 (D. Mass. 1997).[4] Here too, Neovasc is located in Canada.

In sum, the only connections to Massachusetts stem from the fact that CVT briefly resided in Massachusetts before departing for California. Yet a claimant "cannot invoke the protection of Chapter 93A on the sole basis that Massachusetts, by being plaintiff's state of domicile, is the place of injury." *Paradigm*, 842 F. Supp. 2d at 670 n.5 (emphasis omitted). Certainly, CVT failed to plead facts from which it could be reasonably inferred that the alleged tortious conduct "occurred primarily and substantially within the commonwealth." Thus, this case is even more far removed from the case where "non-Massachusetts residents are . . . attempting to recover for the allegedly unfair trade practices of a corporation in Massachusetts, under a statute designed to protect against in-state frauds." *Compagnie De Reassurance D'Ile De Fr. v. New Eng. Reinsurance Corp.*, 57 F.3d 56, 90 (1st Cir. 1995). Here, none of the parties are currently in Massachusetts and much of the alleged tortious conduct would have necessarily occurred outside Massachusetts with any injury outside Massachusetts.

## IV.    CONCLUSION

CVT's scant recitation of facts supporting its § 256 claim fails to put Neovasc on notice of the claim against it. In addition, CVT's claim for correction of inventorship should be dismissed because CVT lacks standing. Likewise, CVT's fraud claim lacks the particularized support required by Rule 9(b). Thus, CVT's § 256 and fraud claims should be dismissed. Finally, CVT has failed to allege facts showing that the alleged tortious conduct "occurred

---

[4] *Roche* goes on to suggest that "non-disclosure" can be split between locations in some circumstances, but those circumstances are not present here. 109 F.3d at 830. Regardless, "since all the [alleged] actual misrepresentations . . . were made by the defendants in Canada, the first *Clinton Hospital* factor still weighs in favor of defendants." *Id.*

primarily and substantially within" Massachusetts, which is necessary for a claim under Mass.
Gen. Laws ch. 93A, § 11.


Dated: July 29, 2014                            Respectfully submitted,


                                               /s/Gerard D. O'Shea
                                               Gerard D. O'Shea
                                               State Bar of Massachusetts No. 660236
                                               WILSON SONSINI GOODRICH & ROSATI, P.C.
                                               1301 Avenue of the Americas, 40th Floor
                                               New York, NY  10019-6022
                                               Phone:  212-999-5800
                                               Fax:  212-999-5899

                                               Douglas H. Carsten (*pro hac vice* submitted)
                                               Peter S. Kang (*pro hac vice* submitted)
                                               WILSON SONSINI GOODRICH & ROSATI, P.C.
                                               12235 El Camino Real
                                               Suite 200
                                               San Diego, CA 92130
                                               Phone: 858-350-2305
                                               Fax: 858-350-2399
                                               Email: dcarsten@wsgr.com
                                               Email: pkang@wsgr.com

                                               Charles Tait Graves (*pro hac vice* submitted)
                                               WILSON SONSINI GOODRICH & ROSATI, P.C.
                                               One Market Plaza
                                               Spear Tower, Suite 3300
                                               San Francisco, CA 94105
                                               Phone: 415-947-2109
                                               Fax: 415-947-2099
                                               Email: tgraves@wsgr.com

                                               Shaun R. Snader (*pro hac vice* submitted)
                                               WILSON SONSINI GOODRICH & ROSATI, P.C.
                                               1700 K Street, NW, Fifth Floor
                                               Washington, DC 20006
                                               Phone: 202-973-8800
                                               Fax: 202-973-8899
                                               E-mail: ssnader@wsgr.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants on July 29, 2014.

*/s/ Gerard D. O'Shea*
Gerard D. O'Shea