**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., a Delaware corporation, | ) Civil Action No. 1:14-cv-12405-NMG |
| | ) |
| Plaintiff. | ) |
| | ) |
| v. | ) |
| | ) |
| NEOVASC INC., a Canadian corporation; and | ) |
| NEOVASC TIARA INC., a Canadian corporation, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF OPPOSITION OF PLAINTIFF CARDIAQ VALVE TECHNOLOGIES, INC. TO MOTION OF DEFENDANTS NEOVASC INC. AND NEOVASC TIARA INC. TO DISMISS CLAIMS FOR CORRECTION OF INVENTORSHIP, FRAUD, AND UNFAIR AND DECEPTIVE TRADE PRACTICES**

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ...............................................................................................1

II. ARGUMENT .....................................................................................................1

    A. Defendants' Issues with CardiAQ's Correction of Inventorship
        Claim Are Rendered Moot by the First Amended Complaint ....................1

        1. Defendants' Rule 12(b)(6) Motion: Specificity.............................1

        2. Defendants' Rule 12(b)(1) Motion: Standing ...............................2

    B. CardiAQ Pleaded Its Fraud Claim with Requisite Particularity .................2

        1. Neovasc Made False Representations of Material Facts ................3

        2. Neovasc Knew That Its Representations Were False .....................3

        3. Neovasc Made Its False Representations for the Purpose of
           Inducing CardiAQ to Act Thereon ................................................4

        4. CardiAQ Relied upon Neovasc's Representations as True,
           to Its Detriment ..............................................................................4

    C. Defendants Cannot Challenge CardiAQ's Unfair and Deceptive
        Trade Practices Claim at the Pleading Stage ..............................................4

        1. Defendants' Motion to Dismiss CardiAQ's Chapter 93A
           Claim Is Not Ripe for Adjudication..............................................6

        2. CardiAQ's FAC Sufficiently Pleads That Neovasc's
           Conduct Occurred "Primarily and Substantially" Within
           Massachusetts ................................................................................8

III. CONCLUSION.................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page No(s).**

*Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*,
    733 F. Supp. 2d 204 (D. Mass. 2010) ......................................................5, 7

*Bliss Valley Props., LLC v. Eliopulos*,
    No. 04-cv-1100-BLS, 2005 WL 1683749 (Mass. Super. Ct. 2005) ........................5, 7

*Epoxy Tech., Inc. v. Daizo Corp.*,
    No. 12-cv-11409-RWZ, 2013 WL 2146844 (D. Mass. 2013)....................................9

*Fleet Nat'l Bank v. Certain Underwriters at Lloyd's, London*,
    16 Mass. L. Rptr. 212 (Mass. Super. Ct. 2003). ............................................8

*FranCounsel Group, LLC v. Dessange Int'l SA*,
    980 F. Supp. 2d 1 (D. Mass. 2013) ..............................................................2

*Hudson Capital Partners, LLC v. Malnekoff Enters., Inc.*,
    No. 08-cv-3342-BLS., 2009 WL 6766449 (Mass. Super. Ct. 2009) ............................7

*Kansallis Fin. Ltd v. Fern*,
    40 F.3d 476 (1st Cir. 1994)........................................................................6

*Kipp v. Keuker*,
    7 Mass. App. Ct. 206 (1979)......................................................................9

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,
    438 Mass. 459 (2003) ..........................................................................6, 7

*Livingstone Flomeh-Mawutor v. Banknorth, N.A.*,
    350 F. Supp. 2d 314 (D. Mass. 2004) ..........................................................2

*Sentient Jet, LLC v. Appollo Jets, LLC*,
    No. 13-cv-10081-DJC, 2014 WL 1004112 (D. Mass. 2014)........................................9

*Warner-Lambert Co. v. Execuquest Corp.*,
    427 Mass. 46 (1998) ..............................................................................9

*Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*,
    246 F. Supp. 2d 102 (D. Mass. 2003) ..........................................................5, 8

## <u>TABLE OF AUTHORITIES</u>

**Page No(s).**

### OTHER AUTHORITIES

Fed. R. Civ. P. 9 ........................................................................................................4

Fed. R. Civ. P. 12................................................................................................ *passim*

G. L. c. 93A, § 2.........................................................................................................6

G. L. c. 93A, § 11.......................................................................................................6

# I.  INTRODUCTION

Through their Motion to Dismiss, Defendants challenge three of CardiAQ's seven claims for relief.  As discussed in detail below, this Court should deny Defendants' Motion because:

(1)     CardiAQ filed a First Amended Complaint that addresses and alleviates Defendants' level-of-detail and standing concerns regarding CardiAQ's Correction of Inventorship claim;

(2)     CardiAQ pleaded its Fraud claim with more than requisite particularity in its original Complaint; and

(3)     Defendants cannot challenge CardiAQ's Unfair and Deceptive Trade Practices claim at the pleading stage.

# II.  ARGUMENT

## A.     Defendants' Issues with CardiAQ's Correction of Inventorship Claim Are Rendered Moot by the First Amended Complaint

### 1.     Defendants' Rule 12(b)(6) Motion:  Specificity

Defendants contend that CardiAQ's original Complaint does not include sufficient detail regarding the identity of the missing inventors on the '964 patent and their respective inventive contributions.  CardiAQ does not agree.  Nevertheless, to remove any doubt, CardiAQ filed a First Amended Complaint that explicitly identifies two of CardiAQ's principals, Dr. Arshad Quadri and J. Brent Ratz, as co-inventors of the '964 patent.  (FAC ¶ 12.)  The FAC also explains what Dr. Quadri and Mr. Ratz invented (*id.*), and avers that those inventions appear in Claim 1 of the '964 patent (*id.* ¶ 34). CardiAQ alleges that it disclosed Dr. Quadri and Mr. Ratz's inventions to Neovasc (*id.* ¶ 16), and, further, that those inventions were embodied in some of the devices that

CardiAQ provided to Neovasc (*id.*), so that Neovasc could fulfill the Purchase Order (*id.*, Ex. D).

In view of those allegations, this Court should deny as moot Defendants' Rule 12(b)(6) motion on CardiAQ's Correction of Inventorship claim.

### 2. Defendants' Rule 12(b)(1) Motion: Standing

Defendants likewise contend that CardiAQ's original Complaint does not show that CardiAQ has standing to assert its Correction of Inventorship claim. Again, CardiAQ does not agree, but, in any event, CardiAQ's FAC makes the factual allegation that Defendants seek.

Specifically, CardiAQ alleges that the missing inventors on the '964 patent, Dr. Quadri Mr. Ratz, assigned to CardiAQ their respective ownership interests in their inventions. (FAC ¶ 13.) Accordingly, this Court should also deny as moot Defendants' standing challenge to CardiAQ's Correction of Inventorship claim.

### B. CardiAQ Pleaded Its Fraud Claim with Requisite Particularity

As this Court has previously stated,

> The elements of Massachusetts common law fraud are 1) a false representation of a material fact, 2) with knowledge of its falsity, 3) for the purpose of inducing plaintiff to act thereon and 4) a showing that plaintiff relied upon the representation as true and acted upon it to his detriment.

*FranCounsel Group, LLC v. Dessange Int'l SA*, 980 F. Supp. 2d 1, 6 (D. Mass. 2013) (citing *Livingstone Flomeh-Mawutor v. Banknorth, N.A.*, 350 F. Supp. 2d 314, 317 (D. Mass. 2004)). CardiAQ pleaded all of those elements with sufficient particularity in its original Complaint.

1.      **Neovasc Made False Representations of Material Facts**

CardiAQ alleged that Neovasc made the following false representations of material facts:  (a) Neovasc's products were the Reducer Stent and pericardial tissue products; (b) Neovasc would treat CardiAQ as a "partner"; and (c) Neovasc would maintain the confidentiality of the proprietary technology and trade secrets that CardiAQ disclosed to Neovasc.  (*See* Compl. ¶ 48; FAC ¶ 50.)  Neovasc, through Brian McPherson (who identified himself as "VP, Operations" and "President, Surgical Products"), made the first two representations in Mr. McPherson's unsolicited June 4, 2009, email to Mr. Ratz.  (*See* Compl. ¶ 12; FAC ¶ 14 and Ex. A at 3, 4, 11, 13, & 15.)  Neovasc made the third representation to CardiAQ in the form of a promise contained in the NDA that the parties signed on June 4, 2009.  (*See* Compl. ¶ 13 and Ex. B; FAC ¶ 15 and Ex. B.)

2.      **Neovasc Knew That Its Representations Were False**

As CardiAQ articulated in its Complaint, Neovasc knew that the first two representations were false because Neovasc had begun developing its own transcatheter mitral valve, which would compete with CardiAQ's products.  (*See* Compl. ¶¶ 15 & 16; FAC ¶¶ 17 & 18.)  That is, (a) Neovasc's products were not limited to the Reducer Stent and pericardial tissue products; and (b) Neovasc, as a competitor, would not be CardiAQ's "partner."  The third representation was also false, and Neovasc knew it, because Neovasc used CardiAQ's proprietary information to file its own patent applications (*see* Compl. ¶ 24; FAC ¶ 26) and to design and develop its own products (*see* Compl. ¶ 30 and Ex. E; FAC ¶ 32 and Ex. E).

3. **Neovasc Made Its False Representations for the Purpose of Inducing CardiAQ to Act Thereon**

CardiAQ explicitly makes this allegation.  (*See* Compl. ¶ 49; FAC ¶ 51.)  If there were any doubt about Neovasc's scienter, the fact that, even after the parties' business relationship ended, Neovasc sought to learn about the outcome of CardiAQ's testing of its proprietary designs, confirms this intent element.  (*See* Compl. ¶ 22; FAC ¶ 24.)

4. **CardiAQ Relied upon Neovasc's Representations as True, to Its Detriment**

In reliance upon Neovasc's representations, including Neovasc's promises set forth in the NDA, CardiAQ repeatedly disclosed to Mr. McPherson and to Neovasc's Randy Matthew Lane (who is a named inventor on the '964 patent (*see* Compl. ¶ 33; FAC ¶ 35)) CardiAQ's confidential and proprietary designs, specifications, frames, and other mitral valve components.  (*See* Compl. ¶¶ 14 & 19; FAC ¶¶ 16 & 21.)  Those disclosures included Dr. Quadri and Mr. Ratz's inventions (*see* FAC ¶ 12), which subsequently appeared in Defendants' '964 patent (*see* Compl. ¶¶ 24 & 32; FAC ¶¶ 26 & 34), which lists Mr. Lane as an inventor (*see* Compl. ¶ 33; FAC ¶ 35), to CardiAQ's detriment.

Thus, CardiAQ has pleaded in more than sufficient detail all of the elements of its Fraud claim.  If Defendants have follow-up questions regarding these facts, then they may explore them in discovery.  Defendants' Rule 9 and Rule 12(b)(6) motion should be denied.

C. **Defendants Cannot Challenge CardiAQ's Unfair and Deceptive Trade Practices Claim at the Pleading Stage**

Defendants assert that they are entitled to the dismissal of CardiAQ's Chapter 93A claim because the alleged conduct on which it is based did not occur

"primarily and substantially" in Massachusetts.  If Defendants' position were correct, then a tortfeasor could always escape Chapter 93A liability, despite unfairly and deceptively competing with a Massachusetts resident, simply by committing its torts remotely and avoiding setting foot in Massachusetts.  That is not the law.

Defendants' argument must be rejected because it wholly ignores that this particular ground for challenging a Chapter 93A claim, "absent some extraordinary pleading concession by a claimant," cannot be resolved by a motion to dismiss.  *Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F. Supp. 2d 204, 213 (D. Mass. 2010) (quoting *Bliss Valley Props., LLC v. Eliopulos*, No. 04-cv-1100-BLS, 2005 WL 1683749, *6 (Mass. Super. Ct. 2005)).  Instead, the resolution of this issue explicitly requires findings of fact, and, thus, it not suitable for determination on a motion to dismiss.  Accordingly, Massachusetts courts[1] have routinely denied motions to dismiss Chapter 93A claims based upon "primarily and substantially" challenges as premature and unripe.  When not summarily denied, courts decide this issue at the Rule 12(b)(6) stage, not by applying the "Center of Gravity Test" as stated by Defendants, but through a simple pleading test.  The correct test merely requires that the complaint allege that the plaintiff was located in Massachusetts when the conduct giving rise to the Chapter 93A took place, and claim an injury in Massachusetts.  CardiAQ's FAC satisfies these pleading requirements.  Consequently, even if this Court were to overlook the premature nature of Defendants' challenge, their motion to dismiss CardiAQ's Chapter 93A claim still must be denied.

---

[1]      Federal courts are bound by the construction given to state statutes by the highest state court.  *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 118 (D. Mass. 2003).

1. **Defendants' Motion to Dismiss CardiAQ's Chapter 93A Claim Is Not Ripe for Adjudication**

A Massachusetts statute, G. L. c. 93A, § 2, makes it unlawful to engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." In the context of G. L. c. 93A, an unfair or deceptive act or practice between businesses is not actionable unless it occurs "primarily and substantially within the commonwealth." G. L. c. 93A, § 11. Significantly, this exemption from liability is not a jurisdictional prerequisite to suit. Rather, G. L. c. 93A, § 11 makes this exemption from liability available as an affirmative defense, which must be alleged and proved by the defendant.[2] *Kansallis Fin. Ltd v. Fern*, 40 F.3d 476, 481 (1st Cir. 1994) ("defendants bear the burden of proving a lack of primary and substantial involvement in Massachusetts").

In *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459 (2003), the Supreme Judicial Court established the approach that courts must take when determining whether the conduct constituting the G. L. c. 93A, § 11 claim occurred primarily and substantially in Massachusetts. Mindful of the "misgivings about the utility of a formula for analyzing all cases under [G. L. c. 93A, § 11]" and noting that this "is not a determination that can be reduced to any precise formula," the court explicitly denounced establishing a rigid test. *Kuwaiti*, 438 Mass. at 472. Instead, the court ruled that the "primarily and substantially" inquiry under G. L. c. 93A, § 11 must be "fact intensive," "unique to each case," and not "based on a test identified by any particular factor or factors." *Kuwaiti*, 438 Mass. at 472-473. Continuing, the court noted that "[o]n

---

[2]   Massachusetts General Laws c. 93A, § 11, provides that "the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially with the commonwealth."

the one hand, a single instance of misconduct in one jurisdiction may have greater significance for a case as a whole than a multiplicity of instances of misconduct in another jurisdiction.  On the other hand, the sheer number of instances of misconduct in one jurisdiction may produce the heft needed to resolve the question."  *Id.* at 473. Therefore, to decide the issue, the Supreme Judicial Court held that a court must, "***after making findings of fact, and after considering those findings in the context of the entire [Section] 11 claim***, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."  *Id.* (emphasis added).

Defendants' motion to dismiss utterly disregards a plethora of case law in the Commonwealth including the most basic requirement set forth in *Kuwaiti*.  Indeed, Defendants completely ignore that the "Center of Gravity Test" must be decided on the basis of factual findings.  Since a court does not make findings of fact at the Rule 12(b)(6) stage, most courts have summarily rejected motions to dismiss raising a "primarily and substantially" challenge, like that advanced by Defendants, as unripe. *See, e.g.*, *Berklee*, 733 F. Supp. 2d at 213 ("Due to the fact-finding process necessarily involved in evaluating the [93A] issue," it should not be resolved at the Rule 12 stage); *Hudson Capital Partners, LLC v. Malnekoff Enters., Inc.*, No. 08-cv-3342-BLS., 2009 WL 6766449 (Mass. Super. Ct. 2009) ("Whether the conduct giving rise to the defendants' Chapter 93A claim occurred primarily and substantially in Massachusetts is an issue to be more appropriately addressed later in the litigation."); *Bliss Valley Props., LLC v. Eliopulos*, No. 04-cv-1100-BLS, 2005 WL 1683749, *6 (Mass. Super. Ct. 2005) (a "primarily and substantially" challenge, absent some extraordinary pleading

concession by a claimant, cannot be resolved on a Rule 12 motion); *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 118 (D. Mass. 2003) ("Since a Court does not make [factual] findings when ruling on a motion to dismiss, it would seem that a motion to dismiss is no longer an appropriate vehicle for raising the issue."); *Fleet Nat'l Bank v. Certain Underwriters at Lloyd's, London*, 16 Mass. L. Rptr. 212, *2 (Mass. Super. Ct. 2003) ("The Court finds itself between the mandate of the [SJC] to decide the 'primarily and substantially' issue 'after making findings of fact' and the very liberal requirements for notice pleading at the motion to dismiss stage.  It can do nothing by DENY" the Rule 12 motion) (emphasis in original).

Defendants' motion to dismiss CardiAQ's Chapter 93A claim is plainly not ripe for judicial review at this early stage in the litigation.  Defendants have not yet even filed an answer affirmatively raising a "primarily and substantially" challenge, nor have the parties begun discovery.  Consequently, the court cannot conduct the complex factual inquiry required to determine whether the conduct constituting CardiAQ's Chapter 93A claim occurred primarily and substantially in Massachusetts, and Defendants' motion to dismiss CardiAQ's Chapter 93A claim should be denied as unripe.

    **2.    CardiAQ's FAC Sufficiently Pleads That Neovasc's Conduct Occurred "Primarily and Substantially" Within Massachusetts**

Even where courts have entertained Rule 12 motions, they do not employ the "Center of Gravity Test" to determine if the conduct challenged under Chapter 93A occurred primarily and substantially in Massachusetts.  Instead, these motions are reviewed by a much more lenient pleading standard that is consistent with the general

standard of review governing Rule 12(b)(6) motions.[3]    Under this standard, a Chapter 93A claim should survive a "primarily and substantially" challenge so long as the complaint alleges that the plaintiff was located in Massachusetts when the conduct giving rise to the Chapter 93A took place, and alleges that plaintiff sustained injury in Massachusetts. *See Sentient Jet, LLC v. Appollo Jets, LLC*, No. 13-cv-10081-DJC, 2014 WL 1004112, *12 (D. Mass. 2014); *Epoxy Tech., Inc. v. Daizo Corp.*, No. 12-cv-11409-RWZ, 2013 WL 2146844, *2 (D. Mass. 2013).

CardiAQ's First Amended Complaint satisfies these pleading requirements.  In it, CardiAQ alleges that it maintained its principal place of business in Massachusetts at the critical times relevant to this dispute.  CardiAQ's Chapter 93A claim arises from conduct undertaken by Neovasc while CardiAQ was in Massachusetts, and the parties' business relationship ended when CardiAQ left Massachusetts.   CardiAQ also has sufficiently alleged that it sustained injuries in Massachusetts.   Among other injuries, CardiAQ alleges that Neovasc breached the Non-Disclosure Agreement, misappropriated CardiAQ's trade secrets, and fraudulently induced CardiAQ to share confidential and propriety information, all while CardiAQ was in Massachusetts.  CardiAQ has met its burden of alleging that it was located in Massachusetts when the conduct giving rise to the Chapter 93A claim took place, and that it sustained injury in Massachusetts.

---

[3]    Indeed, Defendants bear the burden of showing beyond doubt that no provable set of facts would entitle CardiAQ to relief.  *Warner-Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 47 (1998).  CardiAQ, on the other hand, bears a "relatively light burden," *id.* at 47, and CardiAQ must be given the benefit of any doubts.  *Kipp v. Keuker*, 7 Mass. App. Ct. 206, 2010 (1979).

### III. <u>CONCLUSION</u>

CardiAQ has remedied the alleged deficiencies (which deficiencies CardiAQ denies) in its Correction of Inventorship claim through the additional allegations in its First Amended Complaint.  CardiAQ pleaded in detail all of the elements of its Fraud claim in its original Complaint.  And Defendants cannot challenge, at the pleading stage, CardiAQ's Unfair and Deceptive Trade Practices claim (and, even if they could, CardiAQ pleads more than sufficient facts to link that claim to Massachusetts). Accordingly, CardiAQ respectfully submits that this Court should deny Defendants' Motion in its entirety.

<div style="margin-left:40%">

Respectfully Submitted,
Plaintiff,

CARDIAQ VALVE TECHNOLOGIES, INC.

By Its Attorneys,
PARTRIDGE SNOW & HAHN, LLP


*/s/ Randall T. Weeks, Jr.*
Randall T. Weeks, Jr. (BBO#630326)
Timothy D. Wenger (BBO#674087)
128 Union Street, Suite 500
New Bedford, MA  02740
(774) 206-8200     Fax (774) 206-8210
rtw@psh.com
tdw@psh.com

</div>

*Of Counsel:*

Vito A. Canuso III (admitted *pro hac vice*)
vito@canuso.com
9582 Featherhill Drive
Villa Park, CA  92861
Telephone:  714-941-0579

John B. Sganga, Jr. (admitted *pro hac vice*)
john.sganga@knobbe.com
John W. Holcomb (admitted *pro hac vice*)
john.holcomb@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA  92614
Telephone:  949-760-0404
Facsimile:  949-760-9502

Dated:  August 12, 2014

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on the 12th day of August, 2014.

/s/ Randall T. Weeks, Jr.
Randall T. Weeks, Jr. (BBO#630326)

18643882
081214