**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., | ) | Civil Action No. 1:14-cv-12405-NMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NEOVASC INC. and NEOVASC TIARA INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF NEOVASC INC.'S AND
NEOVASC TIARA INC.'S MOTION TO DISMISS CLAIMS FOR
CORRECTION OF INVENTORSHIP, FRAUD, AND UNFAIR
AND DECEPTIVE TRADE PRACTICES FROM FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.   FACTS ................................................................................................................. 3

    A.   Inventorship ........................................................................................... 3

    B.   Alleged Fraud......................................................................................... 3

    C.   Alleged Unfair and Deceptive Trade Practices...................................... 4

II.   LEGAL STANDARD ......................................................................................... 4

III.   ARGUMENT ...................................................................................................... 5

    A.   CVT's Correction of Inventorship Claim Should be Dismissed Under Rule 12(b)(6) .................................................................................. 5

        1.   Adequately pleading a claim under § 256 requires, at a minimum, pleading facts supporting conception of the claimed invention.................. 5

        2.   CVT's threadbare correction of inventorship claim fails to put Neovasc on notice of its claim and, thus, should be dismissed ................ 6

    B.   CVT's Fraud Claim Should be Dismissed Under Rule 12(b)(6)......................... 10

        1.   Rule 9(b) requires CVT to plead with particularity the who, what, where, and when of its fraud claim............................................................ 10

        2.   CVT failed to plead its fraud claim with particularity............................. 10

    C.   CVT's Claim Under Mass. Gen. Laws ch. 93A, § 11 Should Be Dismissed....... 14

        1.   The alleged unfair and/or deceptive acts must have "occurred primarily and substantially within the commonwealth"........................... 14

        2.   The only reasonable inference based on CVT's pleading is that the alleged unfair and deceptive acts occurred outside Massachusetts .......... 16

IV.   CONCLUSION.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*,
  771 F. Supp. 2d 32 (D.D.C. 2011) .................................................................................9

*Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S,*
  826 F. Supp. 2d 263 (D.D.C. 2011) ...............................................................................9

*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*,
  374 F.3d 23 (1st Cir. 2004) ..........................................................................................10

*Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.*,
  933 F. Supp. 64 (D. Mass. 1996) .............................................................................16, 20

*Arbitron, Inc. v. Kiefl*, No. 09-cv-0413,
  2010 U.S. Dist. LEXIS 83597 (S.D.N.Y. Aug. 13, 2010) ..........................................8, 9

*Arthur D. Little Int'l, Inc. v. Dooyang Corp.*,
  928 F. Supp. 1189 (D. Mass. 1996) .............................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................4, 5

*Back Bay Farm, LLC v. Collucio*,
  230 F. Supp. 2d 176 (D. Mass. 2002) ...........................................................................16

*Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*,
  152 F. Supp. 2d 95 (D. Mass. 1995) ..............................................................................1

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................2, 5, 10

*Berklee College of Music, Inc. v. Music Indus. Educators, Inc.*,
  733 F. Supp. 2d 204 (D. Mass. 2010) ...........................................................................19

*Bliss Valley Props., LLC v. Eliopulos*, No. 04-1100 BLS,
  2005 Mass. Super. LEXIS 291 (2005) ...........................................................................16

*Bliss Valley Props., LLC v. Eliopulos*, No. 04-cv-1100-BLS,
  2005 WL 1683749 (Mass. Super. Ct. June 2, 2005) ......................................................19

*Burroughs Wellcome Co. v. Barr Labs., Inc.*,
  40 F.3d 1223 (Fed. Cir. 1994) ...............................................................................5, 6, 9

*CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 Civ. 5901(KBF),
  2012 WL 4857518 (S.D.N.Y. Oct. 10, 2012) ...............................................................12

*Clinton Hosp. Ass'n v. Corson Grp., Inc.*,
  907 F.2d 1260 (1st Cir. 1990) ......................................................................................15

*Compagnie De Reassurance D'Ile De Fr. v. New Eng. Reinsurance Corp.*,
    57 F.3d 56 (1st Cir. 1995) ................................................................................18

*Corcoran v. Saxon Mortg. Servs., Inc.*, No. 09-11468-NMG,
    2010 WL 2106179 (D. Mass. May 24, 2010) ............................................10, 11

*Coyle v. Santucci*, No. 13-11204-DHH,
    2014 WL 298843 (D. Mass. Jan. 24, 2014) ...............................................11, 12

*Datatrend, Inc. v. Jabil Circuit, Inc.*,
    3 F. Supp. 2d 66 (D. Mass. 1997) ....................................................................18

*Den Norske Bank AS v. First Nat'l Bank of Boston, N.A.*,
    838 F. Supp. 19 (D. Mass. 1993) ...............................................................17, 18

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004)...............................................................5, 7, 8

*Epoxy Tech., Inc. v. Daizo Corp.*, Civil Action No. 12-11409-RWZ,
    2013 WL 2146844 (D. Mass. May 16, 2013) .............................................16, 19

*Ethicon, Inc. v. United States Surgical Corp.*,
    135 F. 3d 1456 (Fed. Cir.1998)..................................................2, 5, 6, 7, 8

*First Sec. Bank, N.A. v. Northwest Airlines, Inc.*, C.A. No. 95-12103-RGS,
    2001 U.S. Dist. LEXIS 26601 (D. Mass. Jan. 3, 2001) ....................................15

*Fleet Nat'l Bank v. Certain Underwriters at Lloyd's, London*,
    16 Mass. L. Rptr. 212 (Mass. Super. Ct. 2003). ..............................................19

*Hess v. Adv. Cardiovascular Sys., Inc.*,
    106 F.3d 976 (Fed. Cir. 1997)............................................................................5

*Hudson Capital Partners, LLC v. Malnekoff Enters., Inc.*, No. 08-cv-3342-BLS.,
    2009 WL 6766449 (Mass. Super. Ct. Sept. 18, 2009) ......................................19

*In re Cybershop.com Secs. Litig.*,
    189 F. Supp. 2d 214 (D.N.J. 2002) .....................................................................1

*In re Merrill Lynch & Co., Inc.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003).................................................................1

*In re Tyco Int'l, Ltd. Multidistrict Litig. (MDL 1335)*, MDL Docket No. 02-1335-
    B, 2004 U.S. Dist. LEXIS 4133 (D.N.H. Mar. 16, 2004)..................................13

*Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*,
    329 F.3d 216 (1st Cir. 2003)......................................................................14, 15

*Kimberly-Clark Corp. v. Proctor Gamble Distrib. Co.*,
    973 F.2d 911 (Fed. Cir. 1992).............................................................................6

*Kirtz v. Wells Fargo Bank N.A.*, No. 12-10690-DJC,
    2012 WL 5989705 (D. Mass. Nov. 29, 2012) ......................................10, 11, 12

*Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*,
   781 N.E.2d 787 (Mass. 2003) ....................................................................14, 15

*Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12-11874-DJC,
   2013 WL 3335022 (D. Mass. July 1, 2013) ..............................................1

*Orellana v. Deutsche Bank Nat'l Trust Co.*, No. 12-11982-NMG,
   2013 WL 5348596 (D. Mass. Aug. 30, 2013) ...........................................12

*Ouch v. Fed. Nat'l Mortg. Ass'n*, No. 11-12090-RWZ,
   2013 WL 139765 (D. Mass. Jan. 10, 2013) ...............................................10

*Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC*,
   842 F. Supp. 2d 661 (S.D.N.Y. 2012)....................................15, 16, 17, 18, 20

*Republic Bank & Trust Co. v. Bear Stearns & Co.*,
   683 F.3d 239 (6th Cir. 2012) ....................................................................10

*Roche v. Royal Bank of Can.*,
   109 F.3d 820 (1st Cir. 1997) ....................................................................18

*Sentient Jet, LLC v. Apollo Jets, LLC*, Civil Action No. 13-cv-10081,
   2014 WL 1004112 (D. Mass. Mar. 17, 2014) ..........................................19

*Sewall v. Walters*,
   21 F.3d 411 (Fed. Cir. 1994).................................................................6, 7

*Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs.*,
   47 Mass. App. Ct. 154 (Mass. App. Ct. 1999)......................................14, 15

*Specialty Mktg. Group v. Katz*, Civil Action No. 13-12636-LTS,
   2014 U.S. Dist. LEXIS 73861 (D. Mass. May 30, 2014) ........................14

*Steele v. Turner Broad. Sys., Inc.*,
   607 F. Supp. 2d 258 (D. Mass. 2009) ..................................................12, 13

*Stoneridge Control Devices, Inc. v. Teleflex, Inc.*, No. 02-1554,
   2004 Mass. Super. LEXIS 23 (2014).......................................................18

*Uncle Henry's, Inc. v. Plaut Consulting Co.*,
   399 F.3d 33 (1st Cir. 2005) .......................................................................15

*Vanderbilt Univ. v. ICOS Corp.*,
   601 F.3d 1297 (Fed. Cir. 2010)...................................................................6

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996).....................................................................2

*Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*,
   246 F. Supp. 2d 102 (D. Mass. 2003) .......................................................19

*Yankee Candle Co. v. Bridgewater Candle Co.*,
   107 F. Supp. 2d 82 (D. Mass. 2000) ....................................................16, 20

## STATUTES

35 U.S.C. § 256(a)-(b) ..............................................................................5

Cal. Code § 17200 *et seq.* ......................................................................20

Mass. Gen. Laws ch. 93A, § 11 ...................................................3, 4, 14, 20

## RULES

Fed. R. Civ. P. 9(b) ................................................................................10

Fed. R. Civ. P. 12(b)(6)............................................................................4

While Neovasc believes all of CardiAQ Valve Technologies, Inc.'s ("CVT's") claims are without merit, CVT's pleading of three of its claims – correction of inventorship, fraud, and unfair and deceptive business practices under Massachusetts law – is so woefully inadequate that the claims should be dismissed under Federal Rules of Civil Procedure 12(b)(6).[1]  CVT's pleading of these claims is nothing but conclusory bluster with a conspicuous absence of supporting facts.  Indeed, CVT's First Amended Complaint (Dkt. 24) ("FAC") filed in response to CVT's motion to dismiss (Dkt. 17) is scarcely different than the original complaint and fails to address nearly all of the arguments in the first motion to dismiss.  CVT's inability to plead sufficient facts to support its claims even on the second try demonstrates what Neovasc expects to prove – no facts exist to support CVT's claims.  Thus, any amendment is futile.  *In re Cybershop.com Secs. Litig.*, 189 F. Supp. 2d 214, 236 (D.N.J. 2002) (denying leave to amend because "[p]laintiff ha[d] already had its proverbial 'second bite at the apple'"); *In re Merrill Lynch & Co., Inc,.* 273 F. Supp. 2d 351, 390-91 (S.D.N.Y. 2003) (denying motion to amend when party was given opportunity to amend by court and failed to cure deficiencies).

CVT has alleged virtually no facts to support its claims for correction of inventorship of Neovasc's U.S. Patent No. 8,579,964 ("the '964 patent").  CVT merely alleges that certain CVT personnel, Arshad Quadri and J. Brent Ratz, should be named as inventors in addition to or in place of the two Neovasc employees, Randy Matthew Lane and Colin A. Nyuli, named on that patent, and provides a one sentence description of the alleged contribution of Dr. Quadri and Mr. Ratz.  Invention under patent law is not a mere inkling of an idea or concept, but requires "conception," which is a "definite and firm idea" of the claimed invention.  And it is not easy to qualify as someone who should be named as a joint inventor on a patent.  The law requires clear and convincing evidence that the person contributed inventive ideas to the list of claims in the

---

[1] Although Neovasc's motion to dismiss is a partial motion to dismiss, Neovasc is not filing an answer to the remaining claims because an answer is not due until after resolution of even a partial motion to dismiss.  *Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. 12-11874-DJC, 2013 WL 3335022, at *6 (D. Mass. July 1, 2013); *Bay State HMO Mgmt., Inc. v. Tingley Sys., Inc.*, 152 F. Supp. 2d 95, 121-22 (D. Mass. 1995).

patent at issue – and what is "inventive" is narrowly defined.  For these reasons, a plaintiff alleging that it should have been included on a patent as an inventor or joint inventor cannot slide by with vague generalizations.  Yet CVT alleges **no** facts regarding conception of the claimed subject matter of any of the '964 patent's 28 claims[2] by the alleged missing inventors, such as how and when Dr. Quadri and Mr. Ratz made the alleged contribution and how that contribution fits into the claims of the '964 patent.  Certainly, CVT has not alleged conception by Dr. Quadri and Mr. Ratz of each and every element of each of the '964 patent's 28 claims, which is required based on CVT's claim that they should be the sole named inventors.  CVT also does not plead facts supporting the collaboration necessary to support its joint inventorship claim whether that collaboration was allegedly between only Dr. Quadri and Mr. Ratz or also involved the inventors named on the '964 patent.  CVT's failure to plead even basic facts underlying CVT's baseless inventorship claim is, in Neovasc's view, intentional because no such facts exist.  Thus, the Court should dismiss this claim as futile under Rule 12(b)(6).

CVT similarly failed to support its fraud claims with facts identifying the who, where, and when of its claim, as required by Rule 9(b) of the Federal Rules of Civil Procedure.  Nowhere does CVT identify the person(s) who allegedly made the fraudulent statements, much less when the alleged statements were made, to whom, and in what manner.  Thus, Neovasc is left guessing as to the exact nature of the claim against it and the basis for that claim.  In holding a claim inadequately pleaded, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) specifically warned against this slipshod pleading.  *Id.* at 569 n.14.  Specifically, *Twombly* explained that claims based on fraud pose "a high risk of abusive litigation," which explains Rule 9(b) particularized pleading requirements.  *Id.*  CVT's claim is manifestly deficient in meeting Rule 9(b)'s heightened pleading standard and should be dismissed.  CVT tries to cobble together a

---

[2] A patent's claim(s), which appear at the end of a patent, define the invention protected by the patent.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  An inventor must conceive subject matter actually recited in the claims of a patent and not merely described elsewhere in the patent outside of the claims. *Ethicon, Inc. v. United States Surgical Corp.*, 135 F. 3d 1456, 1460 (Fed. Cir.1998).

viable fraud claim in its opposition to Neovasc's motion to dismiss the original complaint, but it is the sufficiency of the FAC, not CVT's explanation in its opposition, that must be evaluated.

Finally, CVT's pleads its unfair and deceptive business practices claims under Mass. Gen. Laws ch. 93A, but the statute cannot apply. Under Chapter 93A, the alleged unfair and/or deceptive acts must have "occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A, § 11. Yet it is clear from CVT's pleading that the alleged bad acts occurred almost entirely, if not entirely, outside Massachusetts. Indeed, the gravamen of CVT's unfair and deceptive business acts claims – that Neovasc allegedly misused CVT confidential information – would necessarily had to have occurred, if at all, at Neovasc's headquarters in Richmond, British Columbia. Likewise, any injury would be felt by CVT in California, not Massachusetts. Thus, CVT has failed to state a claim under Chapter 93A.

## I.    FACTS

### A.    Inventorship

CVT alleges that Dr. Quadri and Mr. Ratz "conceived and/or jointly invented" subject matter recited in "Claim 1 (among other places)" in the '964 patent. FAC at ¶ 34. The entire description of what Dr. Quadri and Mr. Ratz allegedly invented is set forth in one sentence:

> Among other inventions, Dr. Quadri and J. Brent Ratz (CardiAQ's President and Chief Operations Officer) conceived of atrial and ventricular anchoring suitable for a mitral valve prosthetic to engage a portion of the mitral valve from an atrial side of the valve annulus and to engage a portion of the valve from a ventricular side of the valve annulus, as well as a deployment method for such anchoring.

FAC at ¶ 12. CVT does not identify these "other inventions" or provide any details, such as the how and when, of the alleged invention that is identified. Likewise, CVT does not identify how this subject matter fits into what is claimed in claim 1 of the '964 patent.

### B.    Alleged Fraud

CVT's claim for "fraud" is set forth in paragraphs 49-57 of the FAC. Stripped of conclusions, there is little, if anything, left to support CVT's fraud claim. Most importantly, CVT does not allege who at Neovasc made the allegedly fraudulent statements, when these

allegedly fraudulent statements were made (other than after CVT and Neovasc first made contact), and where the allegedly fraudulent statements were made (*e.g.*, in an email, during a meeting, on a call). In addition, CVT does not indicate what type of fraud claim is being asserted, *e.g.*, fraudulent misrepresentation, fraud in the inducement, and fraudulent concealment. For example, CVT's FAC sets forth a number of the allegations CVT contends to be fraudulent in paragraph 50. Those allegations include alleged representations by Neovasc to CVT that Neovasc's "products were the Reducer Stent and pericardial tissue products" and that Neovasc "would treat CardiAQ as a 'partner' . . . ." FAC at ¶ 50. While CVT states that these "representations" were "false," the explanation of falsity focuses on Neovasc competing with CVT. Yet CVT never claims that Neovasc affirmatively represented that it would never compete with CVT. Thus, it is not clear how this relates to the alleged falsity of the allegations.

### C.   Alleged Unfair and Deceptive Trade Practices

CVT's alleges a claim for "unfair or deceptive act[s] or practice[s]" under Mass. Gen. Laws ch. 93A, § 11 (2014). FAC at ¶¶ 67-71. The claim itself alleges no specific "unfair or deceptive acts or practices" and merely references "aforementioned [unfair or deceptive] acts or practices," so it is unclear exactly what acts are being relied upon. *Id*. To the best of Neovasc's understanding, the "aforementioned acts or practices" are those referred to in the prior claim for alleged misappropriation of trade secrets. *See id*. at ¶¶ 58-66. Those "acts or practices" include the allegations regarding "unauthorized disclosure and use of CardiAQ's trade secrets." *Id*. Presumably the "unauthorized disclosure" refers to Neovasc's filing of a patent application and "unauthorized . . . use" refers to development of Neovasc's Tiara device. *See id*. at ¶¶ 26, 29, 32.

## II.   LEGAL STANDARD

A defendant may move to dismiss an action based on a failure to state a claim. Fed. R. Civ. P. 12(b)(6). While "a court must accept a complaint's allegations as true", this tenet is applicable only to facts, not to mere conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by . . . conclusory statements, [no longer] suffice" to withstand a motion to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure. *Id.* at 678. While "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of the prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Id.* at 679 (citation omitted).

## III.   ARGUMENT

### A.   CVT's Correction of Inventorship Claim Should be Dismissed Under Rule 12(b)(6)

#### 1.   Adequately pleading a claim under § 256 requires, at a minimum, pleading facts supporting conception of the claimed invention

"'The inventors as named in an issued patent are presumed to be correct.'" *Hess v. Adv. Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (citation omitted). Nonetheless, Section 256 allows for the correction of inventorship of an issued patent:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error. . . . The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256(a)-(b). A party alleging non-joinder of an inventor, as CVT does here, "must meet the heavy burden of proving its case by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004).

"Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994). "'Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice.'" *Ethicon, Inc.*, 135 F.3d at 1460 (citation omitted) (internal

quotation marks omitted); *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994) ("Conception exists when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is known."). The inventor's idea must be "definite and permanent enough that one skilled in the art could understand the invention." *Burroughs Wellcome*, 40 F.3d at 1228. "The conceived invention must include every feature of the subject matter ***claimed*** in the patent." *Ethicon, Inc.*, 135 F. 3d at 1460 (emphasis added).

In order to be a joint inventor, which CVT alleges (FAC at ¶ 34 ("jointly invented")), "there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Kimberly-Clark Corp. v. Proctor Gamble Distrib. Co.* , 973 F.2d 911, 917 (Fed. Cir. 1992). "[C]ollaboration and joint behavior" has always been a "primary focus" of joint inventorship. *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010). "The interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception." *Id*.

Even what may appear at first blush to be substantial contributions are not necessarily inventive. *Ethicon* provides non-exclusive examples of non-inventive activity: (1) "one does not qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention"; (2) "[o]ne who simply provides the inventor with well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole does not qualify as a joint inventor"; and (3) "depending on the scope of a patent's claims, one of ordinary skill in the art who simply reduced the inventor's idea to practice is not necessarily a joint inventor, even if the specification discloses that embodiment to satisfy the best mode requirement." *Ethicon*, 135 F.3d at 1460 (citations omitted).

### 2.   CVT's threadbare correction of inventorship claim fails to put Neovasc on notice of its claim and, thus, should be dismissed

CVT sets forth its correction of inventorship claim in four short paragraphs nearly devoid of facts. FAC at ¶¶ 33-36. The only meaningful facts that CVT provides are that CVT

personnel, Dr. Quadri and Mr. Ratz, "conceived and/or jointly invented" certain subject matter. FAC at ¶ 34.  CVT describes that subject matter as "atrial and ventricular anchoring suitable for a mitral valve prosthetic to engage a portion of the mitral valve from an atrial side of the valve annulus and to engage a portion of the valve from a ventricular side of the valve annulus, as well as a deployment method for such anchoring" "[a]mong other inventions."  FAC at ¶ 12.  CVT, however, does not identify these "other inventions," describe how the subject matter identified relates to the claims of the '964 patent, or provide any details on the alleged conception, *e.g.*, how and when it occurred.

CVT's failure to allege facts concerning the alleged inventive contribution of Dr. Quadri and Mr. Ratz is a fatal defect.  As explained above, "[c]onception exists when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is known."  *Sewall*, 21 F.3d at 415.  And the contribution of an individual must be weighed against the invention as a whole to determine whether the contribution was, in fact, inventive.  *Eli Lilly.*, 376 F.3d at 1359 ("Contributions to realizing an invention may not amount to a contribution to conception [in some circumstances].").  Thus, conception, and invention by extension, is not merely participating in a meeting, following instructions, or tossing out an idea. *See, e.g.*, *Ethicon*, 135 F. 3d at 1460.  More is required.

To the extent that CVT alleges that Dr. Quadri and Mr. Ratz should be the only named inventors,[3] CVT has failed to adequately plead its claims because it has not alleged conception of "every feature of the subject matter claimed."  *Ethicon, Inc.*, 135 F. 3d at 1460 ("The conceived invention must include every feature of the subject matter claimed in the patent.").  That is, to support its claims that Dr. Quadri and Mr. Ratz should be the ***only*** named inventors, CVT must show that they conceived every element of every claim.  *Id.*  CVT has not even attempted to allege the necessary facts.  Instead, CVT makes a vague allegation concerning the alleged

---

[3] CVT appears to allege that Dr. Quadri and Mr. Ratz should be the only inventors listed or that they should be listed in addition to Messrs. Lane and Nyuli.  *See* FAC ¶ 34 (alleging that Dr. Quadri and Mr. Ratz "conceived and/or jointly invented" claimed subject matter).

contribution of Dr. Quadri and Mr. Ratz and alleges that this contribution somehow relates to claim 1 "among other places" in the '964 patent.  This falls far short of alleging that Dr. Quadri and Mr. Ratz conceived of every element of every claim.  Thus, CVT has failed to sufficiently plead that Dr. Quadri and Mr. Ratz should be the only named inventors of the '964 patent.

CVT's allegation of joint inventorship with the presently named inventors is even more deficient because CVT does not identify the subject matter allegedly conceived jointly and who was involved.  As noted above, joint inventorship requires some element of collaboration and a significant contribution from each person weighed against the invention as a whole.  *Eli Lilly*, 376 F.3d at 1359.  CVT's failure to plead specific facts supporting its alleged conception makes it impossible to conclude that Dr. Quadri and Mr. Ratz provided an inventive contribution to Neovasc as opposed to "simply provide[d] the [true] inventor[s] with well-known principles or explain[ed] the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole . . . ."[4]  *Ethicon*, 135 F.3d at 1460.

Similarly, to the extent that CVT argues that Dr. Quadri and Mr. Ratz alone invented the claimed subject matter of the '964 patent, Dr. Quadri and Mr. Ratz would be joint inventors, but CVT has failed to allege facts showing the conception of each individual.  That failure to plead facts supporting conception is manifestly deficient in view of the bedrock principles of conception and joint inventorship described above.  Courts have dismissed as inadequate inventorship claims supported by even more facts than those marshaled by CVT.

*Arbitron, Inc. v. Kiefl*, No. 09-cv-0413, 2010 U.S. Dist. LEXIS 83597 (S.D.N.Y. Aug. 13, 2010) observed that an inventorship determination requires deciding "whether a contribution is significant when compared to the conception of the invention as a whole."  *Id*. at *19.  Even though the alleged co-inventor pleaded some facts describing what was allegedly conceived, the

---

[4] Certainly, the alleged contribution of Dr. Quadri and Mr. Ratz is not inventive and is simply a regurgitation of what was well known in the prior art.  But based on the standard for a motion to dismiss, CVT's allegations must be accepted as true.  CVT must still allege facts, not mere legal conclusions, that this alleged contribution was inventive.  It has not.

court held that those facts did not permit a conclusion that the alleged contribution was sufficiently significant even if accepted as true.  *Id.* at *20.

Similarly, *Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 771 F. Supp. 2d 32 (D.D.C. 2011) ("*Ipsen Pharma I*") addressed a motion to dismiss an inventorship claim based on failure to plead facts sufficient to show either sole or joint conception.  Even though the pleading at issue recited extensive facts related to the alleged conception, the court held that "these allegations do not allege the level of conception necessary to state a claim for sole inventorship" because the facts did not permit an inference that the alleged idea was "'so clearly defined' that it could be reduce[d] to practice without extensive research."  *Id.* at 38 (quoting *Burroughs Wellcome*,  40 F.3d at 1228); *see also Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S,* 826 F. Supp. 2d 263, 266 (D.D.C. 2011) ("*Ipsen Pharma II*") (dismissing later claim based on same rationale).  Thus, the court dismissed the claim for sole inventorship.  *Ipsen Pharma II*, 826 F. Supp. 2d at 266.  The court also dismissed a joint inventorship claim because the alleged discussions between the joint inventors consisted of nothing "more than discussions on the current state of the art" and did not describe an inventive contribution.[5]  *Ipsen Pharma I*, 771 F. Supp. 2d at 39.

Here too, CVT failed to allege sufficient facts regarding conception and joint inventorship and, in fact, CVT pleaded even less relevant facts than in *Arbitron* and *Tulane*. CVT has failed to allege sufficient facts even when faced with Neovasc's first motion to dismiss to which CVT responded with its FAC.  CVT's inability to plead sufficient facts to support its claim even on its second try demonstrates that CVT's inventorship claim is futile.  Thus, CVT's § 256 claim should be dismissed with prejudice.

---

[5] One claim for joint inventorship was not dismissed because the court held that the alleged discussions were sufficient to demonstrate potential joint inventorship.  *Ipsen Pharma I*, 771 F. Supp. 2d at 39.

**B.     CVT's Fraud Claim Should be Dismissed Under Rule 12(b)(6)**

**1.     Rule 9(b) requires CVT to plead with particularity the who, what, where, and when of its fraud claim**

Claims based on fraud pose "a high risk of abusive litigation." *Twombly*, 550 U.S. at 569 n.14. Thus, a party making a fraud allegation "must state with ***particularity*** the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). To satisfy this requirement for particularity "the pleader usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). In other words, Rule 9(b) requires the pleader "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

**2.     CVT failed to plead its fraud claim with particularity**

Like its inventorship claim, CVT supported its fraud claim with conclusions rather than facts. CVT's claim fails to adequately plead any of the who, where, and when of its fraud claim.

CVT does not plead the "who" by failing to identify the specific speakers. While CVT repeatedly alleges that "Neovasc Inc. represented" various things (*e.g.*, FAC at ¶ 50), CVT never specifically alleges ***who*** – the actual person – made the allegedly fraudulent representations on which it bases its claim. Courts have repeatedly held that identifying a corporation as a speaker does not satisfy Rule 9(b)'s particularity requirement. For example, *Kirtz v. Wells Fargo Bank N.A.*, No. 12-10690-DJC, 2012 WL 5989705 (D. Mass. Nov. 29, 2012) held that "[a]n allegation that an unnamed employee of the [corporation] made a particular statement simply describes a statement made by an unidentified person at an unnamed place and at an unspecified time is thus patently inadequate under Rule 9(b)." *Id.* at *5 (citation omitted) (internal quotation marks omitted); *see also Ouch v. Fed. Nat'l Mortg. Ass'n*, No. 11-12090-RWZ, 2013 WL 139765, at *1 n.2 & *1-*2 (D. Mass. Jan. 10, 2013); *Corcoran v. Saxon Mortg. Servs., Inc.*, No. 09-11468-NMG, 2010 WL 2106179, at *5 (D. Mass. May 24, 2010) (stating that Plaintiff's complaint was

"woefully inadequate" because, *inter alia*, Plaintiff alleged that only the corporation, rather than any specific person or persons, made the alleged misrepresentations).  Even after Neovasc raised this issue in its motion to dismiss the fraud claim in the original complaint, CVT did not correct this defect.  It simply points to one person, Brian McPherson, who allegedly made some, but not all, of the alleged representations.  *See* Dkt. 28 at 3.

CVT also fails to adequately plead "where" the fraud occurred.  While the complaint is hardly a model of clarity, CVT appears to rely on multiple statements.  *See, e.g.*, FAC at ¶ 52 ("The **representations** that Neovasc Inc. made were, in fact, false." (emphasis added)); Dkt. 28 at 3.  Yet CVT does not allege where the statements were made, *e.g.*, during a call, in an email, during an in person meeting.  Neovasc and CVT personnel had numerous interactions, so it is impossible to determine based on CVT's allegations where the alleged misrepresentations were made.  This failure to plead with specificity runs afoul of Rule 9(b)'s requirements.  *See, e.g.*, *Coyle v. Santucci*, No. 13-11204-DHH, 2014 WL 298843, at *5 (D. Mass. Jan. 24, 2014) (granting the motion to dismiss under Rule 9(b) because the complaint failed to plead where the allegedly fraudulent representation took place); *Kirtz*, 2012 WL 5989705, at *5-6 (dismissing claim based on, *inter alia*, failing to specify place statement allegedly occurred).

Finally, CVT fails to adequately plead "when" the allegedly fraudulent representations occurred.  CVT simply states that the representations were "[b]eginning in June 2009."  FAC at ¶ 50.[6]  This allegation adds nothing because, according to the complaint, June 2009 is the very first contact between CVT and Neovasc.  FAC at ¶ 14.  Thus, this allegation says nothing other than the alleged fraudulent representations were made after the first contact between the companies.  Requiring CVT to plead the "when" of its fraud claim is not a mere formality.  For example, CVT alleges that Neovasc made representations while it "intended to compete" with CVT.  Of

---

[6] In its opposition to the original motion to dismiss, CVT identifies three alleged misrepresentations allegedly occurring on June 4, 2009 (Dkt. 28 at 3), but CVT's FAC is not so clear.  By stating that the alleged misrepresentations were "[b]eginning in 2009" (FAC at ¶ 50), the FAC suggests additional alleged misrepresentations and/or alleged misrepresentations occurring at different times.

course, CVT does not allege that Neovasc affirmatively represented they would never compete with CVT. Similarly, CVT states that "*[w]hen* Neovasc Inc. made [certain] representations, it knew them to be false. . . ." FAC at ¶ 53 (emphasis added). Without knowing when the alleged representations were made, Neovasc is left hamstrung in defending against these allegations because it is left guessing at the timing, which is fundamental to CVT's claim. In these circumstances, courts routinely dismiss fraud claims. *Coyle*, 2014 WL 298843, at *5 (granting the motion to dismiss under Rule 9(b) because the complaint failed to plead when the allegedly fraudulent representation took place); *Orellana v. Deutsche Bank Nat'l Trust Co.*, No. 12-11982-NMG, 2013 WL 5348596, at *10-11 (D. Mass. Aug. 30, 2013) (same); *Kirtz*, 2012 WL 5989705, at *5 (same).

In addition, CVT failed to identify specifically what type of fraud it is alleging. Thus, Neovasc is left guessing as to whether CVT contends fraud in the inducement, fraudulent concealment, fraudulent misrepresentation, or something else.[7] Because the elements of these types of fraud can differ, CVT's failure to identify the legal principle it relies upon makes it impossible to determine whether CVT adequately pleaded its claim, even setting aside CVT's failure to meet the requirements of Rule 9(b).

In its opposition to Neovasc's motion to dismiss the original complaint, CVT seeks to explain away its failure to plead its claims with particularity by cobbling together and expounding on certain allegations from the FAC. *See* Dkt. 28 at 2-4. The problem with CVT's approach is that the complaint lacks the detail included in its opposition. "[A] plaintiff cannot amend a complaint with new allegations contained in an opposition to a motion to dismiss." *CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 Civ. 5901(KBF), 2012 WL 4857518, at *1 (S.D.N.Y. Oct. 10, 2012) (citation omitted); *see also Steele v. Turner Broad. Sys., Inc.*, 607 F. Supp. 2d 258, 263 (D. Mass. 2009) (stating that "assertions in an opposition to a motion are not

---

[7] Again, CVT seeks to clarify in its opposition that it is relying on fraudulent misrepresentations under Massachusetts law, but this is not apparent from the FAC.

the equivalent of factual pleadings" and to allow even a pro se plaintiff "to plead facts in such a manner would grant too much leeway . . . at the expense of orderly procedure and would deprive the defendants of clear notice of the allegations against them."); *In re Tyco Int'l, Ltd. Multidistrict Litig. (MDL 1335)*, MDL Docket No. 02-1335-B, 2004 U.S. Dist. LEXIS 4133, at *4-5 (D.N.H. Mar. 16, 2004) (refusing to consider facts in opposition to motion to dismiss, but not in complaint, and collecting cases). Thus, it is the sufficiency of the FAC – not CVT's after-the-fact explanation of the FAC – that must be evaluated. And the complaint fails to include the level of detail required.

Specifically, CVT identifies three alleged misrepresentations in its opposition allegedly made on June 4, 2009: (1) that Neovasc's products were the Reducer Stent and perdicardial tissue products; (2) that "Neovasc would treat CardiAQ as a 'partner'"; and (3) that Neovasc would maintain the confidentiality of confidential information received from CVT. Dkt. 28 at 3. CVT disregards other representations and alleged concealments contained in its FAC. FAC at ¶¶ 14, 17, and 24. Even as to the three alleged misrepresentations plucked from the FAC, CVT does not allege facts showing that these statements were false when made, June 4, 2009. For example, CVT has not identified any Neovasc products on June 4, 2009, other than the Reducer Stent and pericardial tissue products. The FAC also suggests alleged representations made at times other than June 4, 2009, but says nothing of this in its opposition. *See* FAC at ¶ 16 (discussing misrepresentations "*[b]eginning* in June 2009" (emphasis added)).

Moreover, while CVT argues in its opposition that Neovasc "knew that the [] representations were false," the FAC does not allege facts supporting this argument. CVT points to paragraphs 17, 18, 26, and 32 of the FAC (Dkt. 28 at 3), but these paragraphs do not allege that Neovasc knew the alleged misrepresentations to be false. Instead, paragraphs 17 and 18 state that Neovasc "had begun developing its own transcatheter mitral valve in 2009," but that does not mean that Neovasc had products other than the Reducer Stent or pericardial tissue on June 4, 2009. FAC at ¶ 18. Similarly, paragraph 26 of the FAC alleges that Neovasc filed a patent application allegedly containing CVT confidential information, and paragraph 32 of the

FAC alleges that Neovasc used CVT confidential information in product development.  FAC at ¶¶ 26, 32.  Nowhere in those paragraphs (or elsewhere) does CVT allege that Neovasc knew that it would not treat CVT as a "partner" or not abide by the NDA at the time of the alleged misrepresentations.   Thus, the FAC does not allege that Neovasc made the alleged misrepresentations "with knowledge of [their] falsity," an admitted element of CVT's claim.[8] *Specialty Mktg. Group v. Katz*, Civil Action No. 13-12636-LTS, 2014 U.S. Dist. LEXIS 73861, at *13-14 (D. Mass. May 30, 2014) ("Nowhere in the Complaint do Plaintiffs allege that Mr. Katz made the promise with knowledge of its falsity or the intent, at the time he made the promise, to renege." (citation omitted)).  CVT cannot make this showing because it is untrue.

### C.   CVT's Claim Under Mass. Gen. Laws ch. 93A, § 11 Should Be Dismissed

#### 1.   The alleged unfair and/or deceptive acts must have "occurred primarily and substantially within the commonwealth"

Mass. Gen. Laws ch. 93A, § 11 contains a territorial limitation, such that actions under that statute can only be maintained if the alleged unfair and/or deceptive acts occurred "primarily and substantially within the commonwealth":

> No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice ***occurred primarily and substantially within the commonwealth***. For the purposes of this paragraph, the burden of proof shall be upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth.

Mass. Gen. Laws ch. 93A, § 11 (emphasis added).  Thus, "when 'virtually all the conduct that can be said to be unfair or deceptive' occurs outside the Commonwealth, there can be no Chapter 93A liability."  *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 236 (1st Cir. 2003) (quoting *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 800 (Mass. 2003)).  Courts have speculated that the Legislature may have "had in mind . . . to

---

[8] CVT alleges that Massachusetts law applies. Dkt. 28 at 2. For the purposes of this motion, Neovasc assumes this to be true without conceding that Massachusetts law does, in fact, apply.

improve the moral tone of business in the Commonwealth, but were not interested in trying to impose our normative standards on other communities, especially when reaching beyond our borders might dampen the enthusiasm of outsiders to trade here." *Sonesta Int'l Hotels Corp. v. Cent. Fla. Invs.*, 47 Mass. App. Ct. 154, 159 (Mass. App. Ct. 1999); *see also First Sec. Bank, N.A. v. Northwest Airlines, Inc.*, C.A. No. 95-12103-RGS, 2001 U.S. Dist. LEXIS 26601, at *16-17 (D. Mass. Jan. 3, 2001) (describing "the Legislature's apparent policy of giving primary emphasis to the policing of behavior of businesses domiciled within Massachusetts").

*Kenda* adopted the "center of gravity" test set forth by the Massachusetts Supreme Judicial Court in *Kuwaiti Danish* to determine whether § 11's territorial limitation is satisfied. *Kenda*, 329 F.3d at 234-35. The center of gravity test requires a court to look at the facts as a whole to determine whether the alleged tortious conduct occurred "primarily and substantially within" Massachusetts:

> Section 11 suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.

*Id.* (quoting *Kuwaiti*, 781 N.E.2d at 799). This test replaced an earlier three-factor test: (1) "where the defendant committed the deceptive or unfair acts or practices"; (2) "where the plaintiff received and acted upon the deceptive or unfair statements"; and (3) "the situs of plaintiff's losses due to the unfair or deceptive acts or practices." *Clinton Hosp. Ass'n v. Corson Grp., Inc.*, 907 F.2d 1260, 1264-66 (1st Cir. 1990). Nonetheless, the three factors are still relevant considerations, and *Kuwaiti Danish* did not necessarily overrule or supersede earlier cases using the three-factor test. *Uncle Henry's, Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir. 2005). For example, "*Kuwaiti Danish* did not retreat from the proposition that, if the significant contacts of the competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." *Id.* A claimant "cannot invoke the protection of Chapter 93A on the sole basis that Massachusetts, by being plaintiff's state of domicile, is the place of injury." *Paradigm BioDevices, Inc. v.*

*Viscogliosi Bros., LLC*, 842 F. Supp. 2d 661, 670 n.5 (S.D.N.Y. 2012) (citing *Yankee Candle Co v. Bridgewater Candle Co.*, 107 F. Supp. 2d 82, 89 (D. Mass. 2000) (emphasis omitted); *Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.*, 933 F. Supp. 64, 68 (D. Mass. 1996)).

Because of the fact-intensive nature of the inquiry, courts have held that a Chapter 93A should survive a motion to dismiss "so long as the complaint alleges that the plaintiff is located, **and** claims an injury, in Massachusetts." *Back Bay Farm, LLC v. Colluccio*, 230 F. Supp. 2d 176, 188 (D. Mass. 2002) (emphasis added). Thus, courts have held that a Chapter 93A claim survives a motion to dismiss if (1) the claimant is located in Massachusetts and (2) sustained an injury in Massachusetts. *Id.*; *see also Epoxy Tech., Inc. v. Daizo Corp.*, Civil Action No. 12-11409-RWZ, 2013 WL 2146844, at *2 (D. Mass. May 16, 2013); Dkt. 28 at 9 (CVT's opposition explaining standard for review of Chapter 93A claim at pleading stage). In this context, some courts have expounded that whether Section 11 is satisfied cannot be resolved at the pleading stage "absent some extraordinary pleading concession by claimant." *Bliss Valley Props., LLC v. Eliopulos*, No. 04-1100 BLS, 2005 Mass. Super. LEXIS 291, at *17 (2005).

### 2. The only reasonable inference based on CVT's pleading is that the alleged unfair and deceptive acts occurred outside Massachusetts

CVT's pleading makes clear that most, if not all, the alleged acts giving rise to CVT's unfair and deceptive business practices claim occurred outside Massachusetts and certainly not "primarily and substantially" within Massachusetts. Instead, the alleged tortious conduct would have necessarily occurred almost exclusively in Richmond, British Columbia, if it had occurred at all, and any injury would be felt by CVT at its present location, Irvine, California. Thus, CVT's own pleading forecloses the possibility of satisfying Section 11.

The heart of CVT's claim appears to be that Neovasc allegedly improperly used CVT confidential information. Because Neovasc is located in British Columbia, any improper use of confidential information would have necessarily occurred there. Any loss resulting from this alleged conduct would necessarily be felt by CVT at its present place of business, California. *See Paradigm*, 842 F. Supp. 2d at 670 ("Massachusetts, by being plaintiff's domicile, was also

the situs of plaintiff's injury"); *Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 928 F. Supp. 1189, 1208 (D. Mass. 1996) ("The second and third [*Clinton*] factors, however, weigh heavily against [claimant] as it has no office in Massachusetts.").  CVT alleges that disclosure of confidential information continued well after its move to California.  FAC at ¶ 24.  But even if some portion of the alleged trade secret misappropriation occurred before CVT's California relocation, any harm could not occur before Neovasc made known its mitral valve prosthesis development efforts, which occurred after CVT was located in California.  FAC at ¶ 18.  That is, CVT could not suffer any harm before Neovasc attempted to capitalize on its development efforts, *e.g.*, obtain funding or solicit partners.  Certainly, CVT alleges that it did not learn of the alleged tortious conduct until it was in California.  *E.g.*, FAC at ¶¶ 24, 29-32; *Den Norske Bank AS v. First Nat'l Bank of Boston, N.A.*, 838 F. Supp. 19, 30 (D. Mass. 1993) (relying on location where claimant learned of allegedly tortious conduct).  Thus, the conduct surrounding the crux of CVT's claim has little to no connection with Massachusetts.

Another of CVT's claims is that Neovasc obtained a patent that allegedly should list CVT personnel as inventors.  FAC at ¶¶ 33-36.  That patent is based on applications, the earliest of which was filed on May 5, 2010.  FAC at ¶ 31.  This has two important effects for the Section 11 analysis.  First, the alleged tortious conduct – filing a patent application without naming CVT personnel – cannot be said to have occurred in Massachusetts.  That is so because Neovasc is located in Richmond, British Columbia, and directed its attorneys in California to file the patent application.  No acts related to Neovasc's filing the applications that resulted in the patent at issue occurred in Massachusetts.  Second, because the application was filed well ***after*** CVT left Massachusetts, any injury suffered by CVT would be felt in California, not Massachusetts.  Thus, under the center of gravity test, there is no substantial connection to Massachusetts.

CVT also claims that Neovasc made misrepresentations to CVT.  Yet CVT does not state when and how these alleged misrepresentations occurred (*see supra* at Section III(C)(2)).  Regardless, the alleged misrepresentations would have necessarily originated in British Columbia.  *See Den Norske Bank AS*, 838 F. Supp. at 29 (explaining that alleged tortious

"[c]orrespondence originated [outside Massachusetts]"); *Stoneridge Control Devices, Inc. v. Teleflex, Inc.*, No. 02-1554, 2004 Mass. Super. LEXIS 23, at *20-21 (2014) (finding that alleged tortious conduct occurred outside Massachusetts based on actions of defendant acting outside Massachusetts).  Thus, based on the complaint, it is impossible to conclude that the alleged misrepresentations "occurred primarily and substantially" in Massachusetts.  In addition, while CVT frames its claim in terms of misrepresentations, the allegations are largely based on Neovasc allegedly failing to disclose to CVT that it was developing a prosthetic mitral valve, *i.e.*, non-disclosure.  *E.g.*, FAC ¶¶ 24-25, 50-52.  "[N]on-disclosure occurs where the defendant who fails to disclose is located.  This was obviously Canada." *Roche v. Royal Bank of Can.*, 109 F.3d 820, 830 (1st Cir. 1997); *see also Datatrend, Inc. v. Jabil Circuit, Inc.*, 3 F. Supp. 2d 66, 78 (D. Mass. 1997).[9]  Here too, Neovasc is located in Canada.

In sum, the only connections to Massachusetts stem from the fact that CVT briefly resided in Massachusetts before departing for California.  Yet a claimant "cannot invoke the protection of Chapter 93A on the sole basis that Massachusetts, by being plaintiff's state of domicile, is the place of injury." *Paradigm*, 842 F. Supp. 2d at 670 n.5 (emphasis omitted).  Certainly, CVT failed to plead facts from which it could be reasonably inferred that the alleged tortious conduct "occurred primarily and substantially within the commonwealth." Thus, this case is even more far removed from the case where "non-Massachusetts residents are . . . attempting to recover for the allegedly unfair trade practices of a corporation in Massachusetts, under a statute designed to protect against in-state frauds." *Compagnie De Reassurance D'Ile De Fr. v. New Eng. Reinsurance Corp.*, 57 F.3d 56, 90 (1st Cir. 1995).  Here, none of the parties are currently in Massachusetts and much of the alleged tortious conduct would have necessarily occurred outside Massachusetts with any injury outside Massachusetts.

---

[9] *Roche* goes on to suggest that "non-disclosure" can be split between locations in some circumstances, but those circumstances are not present here.  109 F.3d at 830.  Regardless, "since all the [alleged] actual misrepresentations . . . were made by the defendants in Canada, the first *Clinton Hospital* factor still weighs in favor of defendants." *Id.*

CVT argues that its FAC satisfies the pleading requirements for a Chapter 93A claim by alleging residence and injury in Massachusetts. Dkt. 28 at 9. CVT is incorrect. While CVT was a resident of Massachusetts at one time, it has not been a Massachusetts company since early 2010. FAC at ¶ 5. Thus, the alleged misconduct would have necessarily harmed CVT, if at all, in California, not Massachusetts, as explained above. In cases CVT cites, courts refused to dismiss Chapter 93A claims based on the residence, not former residence, in Massachusetts.[10] *Berklee College of Music, Inc. v. Music Indus. Educators, Inc.*, 733 F. Supp. 2d 204, 206, 213 (D. Mass. 2010) (explaining that claimant is a Massachusetts corporation that "sustained and continues to sustain losses caused by the wrongful conduct in Massachusetts"); *Hudson Capital Partners, LLC v. Malnekoff Enters., Inc.*, No. 08-cv-3342-BLS., 2009 WL 6766449, at n.4 (Mass. Super. Ct. Sept. 18, 2009) (noting that "the plaintiff maintains its usual place of business in Newtown, Massachusetts"); *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp. 2d 102, 117-18 (D. Mass. 2003) (denying motion to dismiss Chapter 93A claim where plaintiff, a Massachusetts corporation, "incurred a loss in Massachusetts"); *Sentient Jet, LLC v. Apollo Jets, LLC*, Civil Action No. 13-cv-10081, 2014 WL 1004112, at *12 (D. Mass. Mar. 17, 2014) ("Sentient has met its burden of alleging that it is located in Massachusetts and that its injury occurred primarily and substantially in Massachusetts."); *Epoxy*, 2013 WL 2146844, at *2 (finding sufficient pleading where "Epoxy, which is located in Massachusetts, [] alleges that it relied on Daizo's misrepresentations and that it has suffered harm in Massachusetts"). CVT also does not allege in its FAC that it was harmed in Massachusetts. While CVT makes that claim in its opposition (Dkt. 28 at 9), CVT does not cite a single paragraph of its complaint or FAC. At best, CVT alleges that certain tortious conduct occurred during the time CVT was present in

---

[10] In one case, *Bliss Valley Props., LLC v. Eliopulos*, No. 04-cv-1100-BLS, 2005 WL 1683749, *6 (Mass. Super. Ct. June 2, 2005), the residence of the plaintiffs is not clear, but the Chapter 93A claim was dismissed on grounds other than failure to satisfy Section 11's territorial limitation. *Fleet Nat'l Bank v. Certain Underwriters at Lloyd's, London*, 16 Mass. L. Rptr. 212, *2 (Mass. Super. Ct. 2003) denied a motion to dismiss without addressing the facts.

Massachusetts, but that does not mean CVT suffered injury in Massachusetts. As discussed above, any injury would be felt by CVT in California, not Massachusetts.

CVT argues that "[i]f Defendants' position were correct, then a tortfeasor could always escape Chapter 93A liability, despite unfairly and deceptively competing with a Massachusetts resident, simply by committing its torts remotely and avoiding setting foot in Massachusetts." Dkt. 28 at 5. This is incorrect and/or misleading for several reasons. First, CVT appears to take issue with the statute, which clearly requires the acts occur "primarily and substantially within" Massachusetts. Mass. Gen. Laws ch. 93A, § 11. Thus, courts have made clear that a claimant "cannot invoke the protection of Chapter 93A on the sole basis that Massachusetts, by being plaintiff's state of domicile, is the place of injury." *Paradigm*, 842 F. Supp. 2d at 670 n.5 (citing *Yankee Candle*, 107 F. Supp. 2d at 89; *Am. Mgmt. Servs.*, 933 F. Supp. at 68) (emphasis omitted). Second, a business "escap[ing] Chapter 93A liability" does not mean the business could escape liability entirely. Section 11 is not particularly unique, and some other state's law could impose liability. *See, e.g.*, Cal. Code § 17200 *et seq.* Third, in CVT's hypothetical, the aggrieved party is a "Massachusetts resident." CVT is not, which is one reason why CVT could not suffer harm in Massachusetts.

## IV.   CONCLUSION

CVT's scant recitation of facts supporting its § 256 claim fails to put Neovasc on notice of the claim against it. Likewise, CVT's fraud claim lacks the particularized support required by Rule 9(b). Finally, CVT has failed to allege facts showing that the alleged tortious conduct could have "occurred primarily and substantially within" Massachusetts, which is necessary for a claim under Chapter 93A, § 11. These claims should be dismissed.

Dated: August 28, 2014                    Respectfully submitted,

                                          /s/ Shaun R. Snader
                                          Gerard D. O'Shea
                                          State Bar of Massachusetts No. 660236
                                          WILSON SONSINI GOODRICH & ROSATI, P.C.

1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Phone: 212-999-5800
Fax: 212-999-5899

Douglas H. Carsten (*pro hac vice*)
Peter S. Kang (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real, Suite 200
San Diego, CA 92130
Phone: 858-350-2305
Fax: 858-350-2399
Email: dcarsten@wsgr.com
Email: pkang@wsgr.com

Charles Tait Graves (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
Phone: 415-947-2109
Fax: 415-947-2099
Email: tgraves@wsgr.com

Shaun R. Snader (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
1700 K Street, NW, Fifth Floor
Washington, DC 20006
Phone: 202-973-8800
Fax: 202-973-8899
E-mail: ssnader@wsgr.com

*Attorneys for Defendants Neovasc Inc. and Neovasc Tiara Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants on August 28, 2014.

*/s/ Shaun R. Snader*
Shaun R. Snader