# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., a Delaware corporation, </br></br>Plaintiff. </br></br>v. </br></br>NEOVASC INC., a Canadian corporation; and </br>NEOVASC TIARA INC., a Canadian corporation, </br></br>Defendants. | Civil Action No. 1:14-cv-12405-ADB |

**SURREPLY OF PLAINTIFF'S COUNSEL, KNOBBE, MARTENS, OLSON & BEAR, LLP, IN OPPOSITION TO DEFENDANTS' MOTION <u>TO DISQUALIFY PLAINTIFF'S COUNSEL</u>**

## TABLE OF CONTENTS

Page No.

I. INTRODUCTION ...................................................................................................1

II. DEFENDANTS' EFFORT TO ESTABLISH A *PAST* CONFLICT OF INTEREST IS FUTILE ............................................................................................1

III. KNOBBE HAD NO CONFLICT FROM FEBRUARY 2012 TO FEBRUARY 2013 .....................................................................................................2

    A. Defendants Ignore *Brooklyn Navy Yard*, Which Requires That Defendants And Their Corporate Affiliates Be Treated As Separate Entities ..............................................................................................................2

    B. Defendants And Their Affiliates Do Not Share A Sufficient "Unity Of Interests" To Be Treated As One Entity For Conflict Purposes .........................3

IV. KNOBBE'S PAST REPRESENTATION WAS NOT SUBSTANTIALLY RELATED TO THE CURRENT LITIGATION ......................................................5

V. DEFENDANTS' REMAINING ARGUMENTS HAVE NO MERIT ..............................7

    A. Knobbe's Conflict Check Procedures Included A Review By General Counsel And Were Appropriate ................................................................7

    B. Knobbe Acted Only As Local Counsel For NML And BBL ................................7

    C. Knobbe Has Not Revealed Privileged Information On This Motion ......................9

VI. CONCLUSION ........................................................................................................10

## TABLE OF AUTHORITIES

**Page No(s).**

*Brooklyn Navy Yard Cogeneration Partners v. Superior Court*,
    60 Cal. App. 4th 248 (Cal. App. 1997) ........................................................................ *passim*

*Clair v. Clair*,
    464 Mass. 205 (2013) ........................................................................................................ 10

*Ebix.com, Inc. v. McCracken*,
    312 F. Supp. 2d 82 (D. Mass. 2004) ................................................................................ 5, 8

*F.D.I.C. v. R.W. Beck, Inc.*, No. CIV.A.01-CV-11982RGS,
    2004 WL 1474579 (D. Mass. July 1, 2004) ...................................................................... 10

*H.F. Ahmanson & Co. v. Salomon Bros., Inc.*,
    229 Cal. App. 3d 1445 (Cal. App. 1991) ......................................................................... 5, 6

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP*,
    69 Cal. App. 4th 223 (Cal. App. 1999) ..................................................................... 3, 4, 5, 7

*N. Sacca & Sons, Inc. v. E. Coast Excavators, Inc.*,
    1992 Mass. App. Div. 6 (Mass. App. Div. 1992) ......................................................... 1, 2, 3

## OTHER AUTHORITIES

Mass. R. Prof. Conduct 1.9(a) ..................................................................................................... 5

## I. INTRODUCTION

Defendants' motion to disqualify remains fundamentally flawed on many levels. First, Defendants wrongly assume they can prevail by showing that Knobbe had a conflict in the past that resolved itself years ago. To the contrary, courts assess motions to disqualify based on the facts before them at the time of the motion, not the facts as they used to be. Second, Defendants wrongly conclude that Knobbe constructively represented Neovasc Inc. in the past and thus had a conflict of interest at that time. However, under the "alter ego" test applied by California courts and ignored by Defendants, a conflict would have existed only if NML and BBL were alter egos of Neovasc Inc., a position Defendants refuse to take. Similarly, under the "unity of interests" test, a conflict would have existed only if Knobbe gained some practical advantage from its past work as local patent prosecution counsel for NML and BBL. But Defendants do not attempt to show this. Finally, Defendants fail to show any substantial relationship between the current litigation and Knobbe's past local patent prosecution counsel work for NML and BBL. Thus, Defendants have failed to show any current conflict or any current basis for disqualification.

## II. DEFENDANTS' EFFORT TO ESTABLISH A *PAST* CONFLICT OF INTEREST IS FUTILE

Defendants dedicate their entire Reply Brief to an attempt to establish that Knobbe **had** a conflict of interest **from February 2012 until February 2013**. Knobbe had no such conflict. Equally important, Defendants make no effort to establish that Knobbe **has** a **current** conflict of interest, or to explain why an alleged former conflict of interest that resolved itself over two years ago should concern this Court. Indeed, Defendants completely ignore the single most relevant authority before this Court, *N. Sacca & Sons, Inc. v. E. Coast Excavators, Inc.*, 1992 Mass. App. Div. 6 (Mass. App. Div. 1992), and the sound reasoning underlying *N. Sacca*.

As explained in *N. Sacca*, disqualification "is not intended as a penalty" for past conflicts. *Id*. at 7. "The thrust of disqualification is that the offending condition, simultaneous representation, may not be allowed to continue." *Id*. Thus, where a conflict has resolved itself before a motion to disqualify is filed, "disqualification would be an empty ritual, for the evils

which that remedy was intended to cure have been dissipated." *Id*. Accordingly, in deciding a motion to disqualify, a court should assess whether the firm is laboring under a current conflict, not whether it previously had a conflict that has been resolved. *Id*.

Defendants have no response. They neither distinguish *N. Sacca*, nor cite it, nor challenge its reasoning. Instead, they ask this Court to do precisely what *N. Sacca* holds should not be done – disqualify Knobbe as a penalty for an alleged past conflict that has been resolved. Defendants cite no authority supporting such an extraordinary remedy for an alleged problem that no longer exists. Because it is undisputed that Knobbe is not now adverse to a current client, or even an affiliate of a current client, Defendants' motion to disqualify should be denied.

### III. KNOBBE HAD NO CONFLICT FROM FEBRUARY 2012 TO FEBRUARY 2013

Defendants' motion to disqualify fails for a second reason. Knobbe did not have a conflict of interest years ago when it corresponded with Neovasc Inc. while representing NML and BBL in separate patent prosecution matters. Thus, even if it were appropriate to disqualify a law firm as a penalty for a past conflict, there is no basis for imposing a penalty here.[1]

### A. Defendants Ignore *Brooklyn Navy Yard*, Which Requires That Defendants And Their Corporate Affiliates Be Treated As Separate Entities

In an effort to establish a past conflict, Defendants argue that Knobbe's past representation of NML and BBL constructively constituted a past representation of Neovasc Inc. Through this artificial construct, Defendants argue that Knobbe simultaneously represented "Neovasc" while being adverse to "Neovasc." In making this argument, Defendants again ignore highly relevant authority -- *Brooklyn Navy Yard Cogeneration Partners v. Superior Court*, 60 Cal. App. 4th 248 (Cal. App. 1997) -- one of the two leading California cases on

---

[1] It is undisputed that the single Neovasc Inc. patent application filed by Knobbe was abandoned years before Knobbe began corresponding with Neovasc Inc. on behalf of CardiAQ. Thus, Knobbe did not directly represent Neovasc Inc. while being adverse to Neovasc Inc. Accordingly, Knobbe focuses this discussion on its past representation of NML and BBL, and Defendants' theory that Knobbe thereby constructively represented Neovasc Inc. while being adverse to Neovasc Inc.

imputing conflicts from a client to a corporate affiliate. *Brooklyn Navy Yard* squarely holds that conflicts will not be imputed from one corporate affiliate to another unless the two corporations are alter egos of each other. *Id.* at 257-58. Defendants do not even allege that NML and BBL are alter egos of Defendants. Thus, under *Brooklyn Navy Yard*, Knobbe's past representation of NML and BBL did not bar Knobbe from being adverse to Neovasc Inc.

Moreover, fairness dictates that the *Brooklyn Navy Yard* test be applied here. Defendants concede that they derive significant benefits from the separate corporate status of NML and BBL. As explained by Neovasc Inc.'s CEO, "there are different entities in the Neovasc group for IP, tax and other reasons." Dkt. No. 110 ¶ 8. In fact, it appears that different entities are maintained in order to maximize government grants to NML and BBL. Dkt. No. 162 ¶ 37; Dkt. No. 143, Ex. 7. It would be fundamentally unfair for Defendants to receive these benefits by maintaining distinct corporations, while simultaneously arguing they are a single entity for conflict purposes. Treating Defendants and their affiliates as separate corporations for all purposes, unless they are truly alter egos, would prevent this unfairness.

Defendants do not distinguish *Brooklyn Navy Yard*, explain why it should not be followed here, nor even cite it. As with *N. Sacca*, Defendants simply ignore authority that is dispositive of this motion.

B.   **Defendants And Their Affiliates Do Not Share A Sufficient "Unity Of Interests" To Be Treated As One Entity For Conflict Purposes**

Ignoring *Brooklyn Navy Yard*, Defendants instead rely upon the "unity of interests" test applied in *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP*, 69 Cal. App. 4th 223 (Cal. App. 1999). However, *Morrison Knudsen* provides little more support to Defendants than *Brooklyn Navy Yard*. In fact, Defendants do not even dispute the critical ways in which *Morrison Knudsen* counsels against disqualification here.

For example, *Morrison Knudsen* holds that, in most circumstances, "in the representation of corporations, it is the corporate entity actually represented, rather than any affiliated corporation, which is the client." *Id.* at 240 (quoted in Dkt. No. 142 at 15). Defendants have no

response and instead act as if the representation of one corporate affiliate is routinely treated as the representation of all. Similarly, *Morrison Knudsen* holds that "the principal focus should be the practical consequences of the attorney's relationship with the corporate family. If that relationship may give the attorney a significant practical advantage in a case against an affiliate, then the attorney can be disqualified from taking the case." *Id*. at 253 (quoted in Dkt. No. 142 at 15). Defendants again ignore this holding. Critically, Defendants make no effort whatsoever to show that CardiAQ has gained any practical advantage from Knobbe's prior representation of NML and BBL. Thus, under *Morrison Knudsen*, like *Brooklyn Navy Yard*, Defendants' motion to disqualify should be denied.

The lack of any practical advantage is further shown by how independent Neovasc Inc., NML, and BBL were in legal matters. Neovasc Inc. claims it was not even aware that Knobbe represented NML and BBL until just a few months ago, and that it was unaware of Knobbe's alleged fleeting representation of Neovasc Inc. itself, until Knobbe opposed their motion. Knobbe's minor role as local counsel still further confirms the lack of any practical advantage.

Instead of dealing with the holding of *Morrison Knudsen*, Defendants try to establish a "unity of interests" in some undefined, non-legal, colloquial sense by showing that various individuals grouped Neovasc Inc. and its affiliates together in correspondence. For example, Defendants start with a letter written by their **prior** Canadian firm to their **former** U.S. law firm (not Knobbe) in May 2009, long before Knobbe represented NML or BBL. Dkt. No. 160 at 3 (citing Ex. 3). In that letter, the Canadian firm referred to a group of NML and BBL patent applications as the "Neovasc Inc." patent portfolio. *Id*. Defendants fail to explain how their former Canadian counsel's inaccurate description of the patent portfolio shows that Knobbe gained "a significant practical advantage in a case against an affiliate." Thus, Defendants have failed to show a "unity of interests" under *Morrison Knudsen*, 69 Cal. App. 4th at 253.

Defendants also cite Ms. Delaney's letter transferring the NML and BBL files (together with an abandoned file listing Neovasc Inc. as the assignee) to Wilson Sonsini. In that letter, Ms. Delaney incorrectly referred to all of the transferred patents and applications as being "owned by

Neovasc Inc." Dkt. No. 143, Ex. 6 at 1. Once again, this does not show that Knobbe gained "a significant practical advantage in a case against an affiliate," as required by *Morrison Knudsen* to establish a "unity of interests." *Morrison Knudsen*, 69 Cal. App. 4th at 253. Nor does it change the true ownership of those patent applications.

Defendants also argue that their Canadian counsel, Mr. Urbanek, took his directions from Neovasc, Inc. personnel. However, if Defendants are being truthful about the overlap of management personnel, these individuals are also NML and BBL personnel. Thus, Defendants' assertion that Mr. Urbanek took his directions from Neovasc Inc. personnel, rather than NML and BBL personnel, is misleading at best. Moreover, Knobbe again received no practical advantage in the present litigation from the alleged fact that Mr. Urbanek received his instructions in patent prosecution matters from Neovasc Inc. personnel.

## IV. KNOBBE'S PAST REPRESENTATION WAS NOT SUBSTANTIALLY RELATED TO THE CURRENT LITIGATION

Defendants insist that they need not show a "substantial relationship" between Knobbe's past patent prosecution work for NML and BBL and the current trade secret litigation against the Defendants. Dkt. No. 160 at 7. However, that is precisely what Defendants must show. NML and BBL are former clients of Knobbe, not current clients. Under both Massachusetts and California law, a law firm may be adverse to a former client unless the current matter is substantially related to the work done for the former client. *See* Mass. R. Prof. Conduct 1.9(a); *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (Cal. App. 1991). And two matters are "substantially related" only if "it is reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter." *Ebix.com, Inc. v. McCracken*, 312 F. Supp. 2d 82, 89 (D. Mass. 2004); *accord H.F. Ahmanson*, 229 Cal. App. 3d at 1454.

Here, it is undisputed that Knobbe's work for NML and BBL was limited to U.S. Patent Office filings for stents and associated balloon catheters.[2] In contrast, Knobbe's work in the present case relates to Defendants' alleged theft of CardiAQ's trade secrets relating to heart valves. To establish that these disparate matters are somehow "substantially related," Defendants initially invented a new generic term – "cardiac prosthetic devices" – and argued that both stents and heart valves fell within the scope of this coined term. Defendants have now abandoned this approach and do not use this term in their Reply Brief. They instead make two other arguments, neither of which has the slightest merit.

First, Defendants assert in conclusory fashion that Knobbe has sought discovery of Defendants' Reducer stent in the current litigation. Dkt. No. 160 at 7. However, Defendants do not cite a single discovery request that mentions the Reducer stent or substantively calls for information relating to the Reducer stent. Instead, Defendants generically cite to Exhibits G, H, and M to the Carsten declaration, without ever pointing out what in those exhibits suggests that Knobbe is seeking discovery relating to the Reducer stent. In fact, nothing in those exhibits relates to discovery of the Reducer stent. Nor did Knobbe seek discovery of the patent applications relating to the Reducer stent, their scope, or their status.

Second, Defendants rely upon a proceeding in Germany. *Id*. There, Defendants assert, "CVT claims trade secret ownership over concepts that Knobbe and CVT necessarily know were present in pre-existing Neovasc devices." However, Defendants do not explain how the German suit demonstrates a substantial relationship between Knobbe's past patent prosecution work for NML and BBL and the current trade secret litigation in this Court. Nor can they. Knobbe's knowledge of NML's and BBL's inventions was the same as that of the general public because all of Knobbe's work had published either domestically or internationally.

---

[2] The same is true of the single abandoned patent application which listed Neovasc Inc. as the assignee.

## V. DEFENDANTS' REMAINING ARGUMENTS HAVE NO MERIT

Defendants advance several additional arguments, often without explaining why they believe these arguments have any relevance to this motion. These arguments have no merit.

### A. Knobbe's Conflict Check Procedures Included A Review By General Counsel And Were Appropriate

Defendants first assert that Knobbe's conflict check procedures were inadequate. Dkt. No. 160 at 4-6. However, the issue before the Court is not the procedures used by Knobbe, but the results achieved. If Knobbe has no conflict, and it does not, then it does not matter whether an opposing party, acting with hindsight, can devise criticisms of Knobbe's procedures.

In any event, Defendants' criticisms of Knobbe's procedures, which included a review by Knobbe's general counsel, are meritless. For example, Defendants criticize Knobbe's general counsel for applying the substantial relationship test. *Id.* at 4. However, the substantial relationship test is relevant specifically to determining whether corporate affiliates will be treated as one for conflict purposes. *Morrison Knudsen*, 69 Cal. App. 4th at 245. Defendants also criticize Knobbe's general counsel's application of the "unity of interests" test. But Defendants ignore the fact that Knobbe's general counsel also applied the alter ego test of *Brooklyn Navy Yard*, 60 Cal. App. 4th 248. Even Defendants appear to agree with Knobbe's general counsel that no conflict of interest exists under the alter ego test. Moreover, as explained above, Knobbe's general counsel got it right. There is no conflict of interest here under the unity of interests test.

Defendants also rely upon a blog post from Knobbe's expert, David Hricik. Dkt. No. 160 at 5. However, Mr. Hricik's blog post merely cautions law firms that representing one corporation may be construed as representing a corporate family in some circumstances. *Id*. Mr. Hricik said nothing to support Defendants' argument that such an imputation of conflicts should occur here, or that Knobbe's conflict check was inadequate to root out such conflicts.

### B. Knobbe Acted Only As Local Counsel For NML And BBL

Defendants next dispute that Knobbe's work for NML and BBL was the work of "local counsel." Dkt. No. 160 at 6-7. But Ms. Delaney has submitted a sworn declaration describing

her role in detail, and explaining how little time she spent performing that role. Defendants do not dispute a single statement in Ms. Delaney's declaration. Indeed, Defendants have chosen not to submit a declaration from Mr. Urbanek, the only person with personal knowledge of Ms. Delaney's actions, other than Ms. Delaney herself.

Rather than disputing the facts recited in Ms. Delaney's declaration, Defendants instead argue that the practice of patent law is complicated, not "ministerial." *Id*. at 6. But that generalization does not preclude certain aspects of patent practice, such as local counsel work, from being ministerial. The unrebutted truth remains that the work Ms. Delaney did for NML and BBL was largely ministerial. The complex tasks of interviewing the inventor, preparing a detailed technical patent specification, preparing patent claims to define the legal scope of the invention, and developing arguments in response to Patent Office rejections were all performed entirely by Mr. Urbanek, not Ms. Delaney.

Defendants also argue that, in the eyes of the Patent Office, Ms. Delaney was responsible for all papers filed under her name. *Id*. Defendants have even submitted an entire expert declaration largely to make this one point. Dkt. No. 163. But Defendants and their expert do not argue that Ms. Delaney was required by the Patent Office to perform the substantive work that was actually performed by Mr. Urbanek. Nor do they argue that Ms. Delaney violated any Patent Office rule by acting solely as local U.S. counsel. Instead, their point appears to be that Ms. Delaney had ultimate responsibility for papers filed under her name, just as local counsel in litigation has ultimate responsibility for papers filed under their names.

That is true but irrelevant. Ms. Delaney's minimal role as local counsel is relevant because it further confirms the fact there is no substantial relationship between Ms. Delaney's work and the current litigation. Again, two matters are substantially related only if "it is reasonable to assume that confidential information would have been given to the attorney in the first matter that would be helpful to the adverse client in the second matter." *Ebix.com*, 312 F. Supp. 2d at 89. Ms. Delaney's minor role as local U.S. patent prosecution counsel makes it unreasonable to assume that she received any confidential information relevant to the current

trade secret litigation. The fact that Ms. Delaney bore ultimate responsibility for the filings under her name does not make this any less true.

Finally, Defendants argue that Ms. Delaney's work must have been substantive because she once "called the patent examiner" on behalf of NML or BBL. Dkt. No. 160 at 6-7. However, the content of that call confirms the ministerial nature of Ms. Delaney's work. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nothing about this interaction suggests anything other than routine local counsel work by Ms. Delaney.

C. **Knobbe Has Not Revealed Privileged Information On This Motion**

Defendants next assert that Knobbe has disclosed NML's and BBL's privileged information by not filing its opposition papers under seal. Dkt. No. 160 at 8. This allegation is baseless. As an initial matter, Defendants never contacted Knobbe or CardiAQ after the filing to complain about the public nature of the filing or ask that the opposition papers be sealed. Nor have Defendants filed a motion to seal. A party truly concerned that its affiliates' privileged information had been shared with the public would have taken these steps.

In any event, Defendants have failed to identify a single client confidence that was disclosed. Defendants cite to Paragraphs 8-14, 17-18, and 22-25 of Ms. Delaney's declaration and Pages 5-6 of Knobbe's opposition brief. Dkt. No. 160 at 8. However, these materials do not reveal the content of a single communication between Ms. Delaney and Mr. Urbanek, other than Mr. Urbanek's instruction to Knobbe to transfer all files to Wilson Sonsini. Nor does it reveal a single bit of confidential information about NML or BBL. Instead, these materials reveal only the fact that Ms. Delaney served in the role of local U.S. patent prosecution counsel, taking

instructions from Mr. Urbanek, and the contents of published patent applications.[3]  *See* Dkt. No. 143 ¶¶ 8-14, 17-18, 22-25; Dkt. No. 142 at 5-6.

Moreover, Defendants unquestionably placed Mr. Urbanek's communications with Ms. Delaney at issue, thereby waiving any applicable privilege, because those communications are essential to understanding the nature and scope of Knobbe's past representations of NML and BBL.  *See Clair v. Clair*, 464 Mass. 205, 218-21 (2013); *F.D.I.C. v. R.W. Beck, Inc.*, No. CIV.A.01-CV-11982RGS, 2004 WL 1474579, at *1-2 (D. Mass. July 1, 2004).  Defendants cannot make assertions about the nature of Knobbe's past representations of NML and BBL and then prohibit Knobbe from using relevant evidence to challenge those assertions.

## VI.  CONCLUSION

Defendants' effort to show a past conflict of interest is in vain.  It is their burden to prove a current conflict exists.  Moreover, Defendants have failed even to establish a past conflict.  Accordingly, their motion to disqualify should be denied.

Respectfully Submitted,

KNOBBE, MARTENS, OLSON AND BEAR, LLP,

By Its Attorneys,

GOULSTON & STORRS PC

 */s/ Gary M. Ronan*
Richard M. Zielinski (BBO #540060)
Gary M. Ronan (BBO #653899)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110-3333
phone: 617-482-1776
fax: 617-574-4112
rzielinski@goulstonstorrs.com
gronan@goulstonstorrs.com

Dated:  July 24, 2015

---

[3] Defendants assert that one of these patent applications was not "published in the US," suggesting that the application may have been confidential.  Dkt. No. 160 at 8.  However, as Knobbe has already explained, this same patent application published internationally under the Patent Cooperation Treaty, and the published application publicly listed the United States as a country in which patent protection would be sought.  Dkt. No. 143 ¶ 17.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on the 24th day of July, 2015.

                                        */s/ Gary M. Ronan*
                                        Gary M. Ronan

21121373
071315