UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 14-cv-12405-ADB |
| NEOVASC INC. and NEOVASC TIARA INC., | * * * | |
| Defendants. | * * | |

**OMNIBUS MEMORANDUM AND ORDER**
**RESOLVING MOTIONS TO EXCLUDE AND MOTIONS IN LIMINE**

April 25, 2016

BURROUGHS, D.J.

Plaintiff CardiAQ Valve Technologies, Inc. ("CardiAQ") and Defendants Neovasc Inc. and Neovasc Tiara Inc. (collectively "Neovasc") have filed several motions to exclude testimony and motions in limine. [ECF Nos. 340, 344, 345, 349, 351, 352, 354, 358]. On April 11, 2016, the parties appeared at a pre-trial conference and supplemented their briefing with oral argument. As previewed at the conference and explained further below, the court now rules as follows:

I. **CARDIAQ'S MOTIONS**

   a. **CardiAQ's Motion in Limine No. 1 to Exclude any Exhibit or Other Evidence Using Neovasc's "Public Doman" Production Prefix [ECF No. 345]**

As discussed at the pre-trial conference, trial exhibits may not bear the "PUBLICDOMAIN" production prefix. This prefix is unduly prejudicial given the issues in this case. The parties do not need to remove the "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" production prefix from trial exhibits given the minimal prejudice, the work it would

require to remove that information from every trial exhibit, and the limiting instruction that will be given to the jury. To the extent either party is particularly concerned with the "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY" production prefix being included on a specific trial exhibit, however, the opposing counsel should be notified.

    **b. CardiAQ's Motion in Limine No. 2 to Exclude Evidence or Argument Regarding the Sufficiency of CardiAQ's Revised Disclosure of Trade Secrets [ECF No. 349]**

During the pre-trial conference, the parties were generally in agreement regarding Motion in Limine No. 2. During discovery, CardiAQ disclosed a list of its alleged trade secrets, and at trial, Neovasc may challenge whether these are in fact trade secrets and whether they actually match what CardiAQ possessed in 2009-2010. Neovasc can contest, question and challenge the accuracy of CardiAQ's written list of alleged trade secret claims. The process through which the list came about—during discovery and following motion practice—is irrelevant. Neovasc can establish that CardiAQ created the list after the litigation began, but otherwise, any evidence regarding the discovery dispute and whether the list fulfilled CardiAQ's discovery obligations is excluded.

    **c. CardiAQ's Motion in Limine No. 3 to Exclude any Argument or Evidence Regarding the Safety of the CardiAQ TMVI Device [ECF No. 351]**

As discussed at the pre-trial conference, this issue will largely be resolved on a case-by-case basis at trial. Generally, the Court will not allow Dr. Little to opine about the overall safety of CardiAQ's device, because such testimony is irrelevant and unduly prejudicial. Dr. Little may only discuss the safety of CardiAQ's device as it relates to individual patient outcomes and only to the extent it is directly relevant to the functioning of the anchoring mechanism at issue in this case.

### d. CardiAQ's Motion in Limine No. 4 to Preclude Neovasc From Offering Any Evidence or Argument Regarding CardiAQ's Request for Injunctive Relief or the Financial Impact of Any Damages Award [ECF No. 352]

As discussed at the pre-trial conference, any evidence and testimony concerning CardiAQ's request for injunctive relief will be excluded at trial. Because the jury will not decide whether to impose an injunction, testimony and evidence regarding an injunction, and its potential impacts, are irrelevant and inadmissible at trial.[1]

In addition, Neovasc may not present any evidence about its ability to pay a damages award or the impact of any damages award. Typically, "the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded." Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977). Neovasc contends that this is a special case—that because CardiAQ is seeking a "reasonable royalty" measure of damages, its financial condition is relevant to the royalty it would have been willing to pay during a hypothetical negotiation. "A comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in Georgia–Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." Trustees of Boston Univ. v. Everlight Elecs. Co., No. CV 12-11935-PBS, 2015 WL 6408118, at *1 (D. Mass. Oct. 23, 2015) (quoting ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010)). The parties' financial condition is not one of the fifteen factors listed in Georgia-Pacific Corp. Nonetheless, Neovasc cites two non-binding decisions that allowed the defendant's financial condition to be taken into account for calculating a reasonable royalty. See Innovention Toys, LLC v. MGA Entm't Inc., No. 01-6510, 2012 U.S. Dist. LEXIS 156733, at *12 (E.D. La. Nov. 1, 2012); Century Wrecker Corp. v. E.R. Buske Mfg. Co., 898 F. Supp. 1334, 1338 (N.D. Iowa 1995), on

---

[1] Neovasc did not oppose this part of CardiAQ's motion. [ECF No. 392 at 1 n.1].

reconsideration in part (Sept. 29, 1995). The Court is not persuaded by either case. In Innovention Toys, plaintiff requested that defendant's financial condition be admissible, only after the defendant had "put their wealth and size at issue by arguing that Plaintiff [was] too small to compete." 2012 U.S. Dist. LEXIS 156733, at *10. And in Century Wrecker Corp., though evidence of defendant's financial condition was allowed, it was "entitled to very little weight." 898 F. Supp. at 1338. The Court finds that the relevance of Neovasc's financial condition, which even under Neovasc's theory would be one of many factors considered to compute the reasonable royalty, is outweighed by the potential danger that the jury could award damages unduly based on Neovasc's ability to pay. See C & C Jewelry Mfg., Inc. v. West, No. C09-01303 JF HRL, 2011 WL 2559638, at *1 (N.D. Cal. June 28, 2011) (finding that plaintiff's overall profitability, including revenues derived from non-accused products, was irrelevant to the determination of a reasonable royalty).

Neovasc's request that evidence of its financial condition be admitted for purposes of determining any punitive damages is similarly denied. Neovasc cites two non-binding cases, arising under different statutes and contexts. It has not identified a single case in which the parties' financial condition was admitted for purposes of determining whether (1) double or treble damages should be awarded under Mass. Gen. L. ch. 93A or (2) double damages should be awarded under Mass. Gen. L. ch. 93, § 42, which are the punitive damages sought by CardiAQ. The language of the statutes, and case law interpreting the statutes, does not support admitting the parties' financial status. See, e.g., Haddad Motor Grp., Inc. v. Karp, Ackerman, Skabowski & Hogan, P.C., 603 F.3d 1, 4 n.3 (1st Cir. 2010) ("[Chapter 93A] permits the award of double or treble actual damages at the judge's discretion for 'willful or knowing violation[s].'"); Mass.

Gen. L. ch. 93, § 42 ("Whether or not the case is tried by a jury, the court, in its discretion, may increase the damages up to double the amount found.").

## II. NEOVASC'S MOTIONS

### a. Neovasc's Motion to Exclude Purported Expert Testimony of CardiAQ's Brent Ratz [ECF No. 340]

Neovasc has moved to exclude the expert testimony of Brent Ratz ("Mr. Ratz"), who is a co-founder of CardiAQ and will also testify as a fact witness. As further explained at the pretrial conference, Mr. Ratz may testify as an expert, with some limitations. He qualifies as an expert in transcatheter mitral valve replacement devices, and CardiAQ has made the required disclosures under Fed. R. Civ. P. 26(a)(2)(C). See Ji v. Bose Corp., 538 F. Supp. 2d 354, 359 (D. Mass. 2008) ("[S]ufficient experience in a relevant field can qualify a person as an expert witness and that expertise is unaffected by her interest in this case."). Mr. Ratz, who was not retained or specifically employed in connection with the litigation, was not required to submit an expert report under Fed. R. Civ. P. 26(a)(2)(B). See Downey v. Bob's Disc. Furniture Holdings, Inc., 633 F.3d 1, 7 (1st Cir. 2011) ("[A]s long as an expert was not retained or specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations . . . no report is required."). As described at the pretrial conference, Mr. Ratz may not testify as to certain issues identified in his expert disclosure, including general industry customs beyond his own personal experiences and CardiAQ's damages. Other rulings may be made at trial as the presentation of evidence warrants.

### b. Neovasc's Motion to Exclude Expert Testimony of Michael Wagner [ECF No. 344]

Neovasc's Motion to Exclude Expert Testimony of Michael Wagner is denied. In his expert report, Mr. Wagner calculated a "reasonable royalty" for Neovasc's misappropriation of

trade secrets. This is an appropriate method for determining damages caused by the misappropriation of trade secrets. See Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 381 Mass. 1, 11 (1980) ("This court has recognized three acceptable methods of measuring damages in cases involving business torts such as the misappropriation of trade secrets: the defendant's profits realized from his tortious conduct, the plaintiff's lost profits, or a reasonable royalty."). In addition, his reasonable royalty calculation may be used to assist in the determination of damages for breach of the Non-Disclosure Agreement, which is governed by Canadian law. See Smith v. Landstar Properties Inc., 2011 BCCA 44, 2011 CarswellBC 145 (Can.) ("[T]he law gives effect to the instinctive reaction that, whether or not the appellant would have been better off if the wrong had not been committed, the wrongdoer ought not to gain an advantage for free, and should make some reasonable recompense. . . . The law can in such cases act either by ordering payment over of a percentage of any profit or, in some cases, by taking the cost which the wrongdoer would have had to incur to obtain (if feasible) equivalent benefit from another source.") (quoting Experience Hendrix LLC v. PPX Enterprises Inc., [2003] EWCA Civ 323 (Eng. C.A.)).

    Neovasc specifically challenges Mr. Wagner's assumption that the information CardiAQ shared with Neovasc gave Neovasc an 18-month head start in the development of its Tiara device. This assumption was embedded within Mr. Wagner's calculation of the reasonable royalty. It was based on information provided by Mr. Ratz and the fact that CardiAQ's work on the relevant technology began in August 2008 and CardiAQ and Neovasc's business relationship ended in April 2010. [ECF No. 363-2 at 78]. An expert report may be based on assumptions that the expert does not know to be true, and it is up to the party who calls the expert to establish the assumption through other evidence. See Williams v. Illinois, 132 S. Ct. 2221, 2228 (2012)

("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true. It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert."). Given that there is some evidence in the record to support the 18-month assumption, and that the assumption is one piece of Mr. Wagner's larger reasonable royalty analysis, the Court will not exclude his opinion. At trial, CardiAQ must present other evidence to establish the facts assumed by the expert, and Neovasc is free to challenge that evidence and cross-examine Mr. Wagner (and others) about the assumption.

In addition, Neovasc contends that Mr. Wagner's analysis inappropriately incorporated financial information that arose *after* the date of the hypothetical negotiation. "A comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable royalty calculation appears in Georgia–Pacific Corp. v. United States Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)." Trustees of Boston Univ. v. Everlight Elecs. Co., No. CV 12-11935-PBS, 2015 WL 6408118, at *1 (D. Mass. Oct. 23, 2015) (quoting ResQNet.com, Inc. v. Lansa, Inc., 594 F.3d 860, 869 (Fed. Cir. 2010)). Several of the factors listed in Georgia-Pacific involve such ex-post evidence, including: the "current popularity" of the infringing product, the "established profitability" of the product, and the "extent to which the infringer has made use of the invention." Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc., 446 F.2d 295 (2d Cir. 1971); see also Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1333 (Fed. Cir. 2009) ("[T]he hypothetical negotiation analysis 'permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.'") (quoting Fromson v. Western Litho Plate & Supply Co., 853

F.2d 1568, 1575 (Fed. Cir. 1988)). Though Mr. Wagner considered ex-post evidence, such as the value of the Tiara in 2015, he calculated a reasonable royalty using a hypothetical negotiation date of March 2010, the date on which CardiAQ and Neovasc cut ties. [ECF No. 363-2 at 63]. Accordingly, Mr. Wagner's inclusion of ex-post evidence does not render his opinion inadmissible, but it may be challenged by Neovasc at trial through cross-examination or other evidence. See TV Interactive Data Corp. v. Sony Corp., 929 F. Supp. 2d 1006, 1029 (N.D. Cal. 2013) (finding that challenge to use of ex-post evidence in royalty calculation goes to weight and not admissibility).

Lastly, Neovasc objects to Mr. Wagner's reliance on Neovasc's sales of securities to calculate a baseline royalty. Neovasc, however, mischaracterizes the cases on which it relies. The courts in those cases took issue with the plaintiffs' failure to justify how securities sale proceeds should be apportioned among various assets, including the misappropriated trade secrets. See, e.g., Hilderman v. Anea TekSci, Inc., No. 05-cv-1049, 2010 U.S. Dist. LEXIS 11391, at *4-8 (S.D. Cal. Feb. 10, 2010) (finding expert opinion unreliable because it assigned the entire "Goodwill" value of transaction to the trade secrets allegedly misappropriated); Storage Tech. Corp. v. Cisco Sys., No. 00-2253, 2003 U.S. Dist. LEXIS 17347, at *28-29 (D. Minn. Sept. 25, 2003), aff'd, 395 F.3d 921 (8th Cir. 2005) (finding that expert opinion amounted to "nothing more than rank speculation," in part because expert attributed entire acquisition price to the allegedly misappropriated trade secrets). No cases cited by Neovasc hold that a plaintiff may not rely on the proceeds from a securities sale, acquisition, or merger in the damages calculation for misappropriated trade secrets. See id. Here, in contrast to the cited cases, Mr. Wagner did apportion the value of the securities sale between CardiAQ's and Neovasc's contributions. [ECF No. 363-2 at 67]. Neovasc may challenge this apportionment at trial, but it is not grounds for

excluding Mr. Wagner's opinion.

### c. Neovasc's Motion in Limine to Exclude Certain Expert Opinions of Richard Hillstead [ECF No. 354]

Neovasc's Motion in Limine argues that several components of Dr. Richard Hillstead's expert report should be excluded, namely his opinions regarding (1) "industry standards;" (2) whether something can be "unseen;" (3) whether Neovasc benefited from "negative know how;" and (4) the secrecy of CardiAQ's alleged trade secrets.

First, Dr. Hillstead may testify regarding industry customs within the field of transcatheter cardiovascular devices. Dr. Hillstead has several decades of experience in the field, at different companies and in different positions, which has given him the requisite expertise to opine on industry customs. See Levin v. Dalva Bros., Inc., 459 F.3d 68, 79 (1st Cir. 2006) ("Expert testimony on industry standards is common fare in civil litigation."); Ji v. Bose Corp., 538 F. Supp. 2d 354, 358-59 (D. Mass. 2008) (holding that years of experience in industry qualified expert to testify on industry customs).

Second, Dr. Hillstead may opine generally that Neovasc benefited in its development of a transcatheter mitral valve replacement device by seeing CardiAQ's confidential information, but he may not specifically testify regarding the "inventive process in the human brain," which goes beyond his area of expertise.

Third, Dr. Hillstead may offer an opinion that Neovasc benefited from "negative know-how" (i.e. CardiAQ's mistakes and discarded or abandoned design features). Dr. Hillstead's experience is more than an adequate basis to qualify him to testify about the general value of the negative know-how CardiAQ disclosed to Neovasc. The jury will be instructed regarding how and if negative know-how factors into the misappropriation of trade secrets claim.

Lastly, Dr. Hillstead may not express an opinion about whether or not any of CardiAQ's technology constitutes a trade secret. Dr. Hillstead may testify about the content of specific public disclosures that he reviewed, but may not opine about the ultimate issue of secrecy. See GSI Tech., Inc. v. United Memories, Inc., No. 5:13-cv-01081, 2015 U.S. Dist. LEXIS 140085, *11-12 (N.D. Cal. Oct. 14, 2015) ("[A]n expert's literature review can prove only that the alleged trade secrets were not in the documents that the expert reviewed, not that they exist nowhere in the public domain.").

### d. Neovasc's Motion in Limine [ECF No. 358]

Neovasc's omnibus Motion in Limine contains four subparts. For the reasons described below, the Motion is granted in part.

First, Neovasc moved to prohibit CardiAQ from altering or modifying its operative trade secret claims during trial. CardiAQ has identified six trade secrets and it may not add to or modify them at trial. At the pre-trial conference, CardiAQ confirmed that it does not plan to alter them. "Confidential Information" under the Non-Disclosure Agreement, however, is not limited to qualifying trade secrets,[2] and CardiAQ may argue that the Confidential Information allegedly used or disclosed in violation of the Non-Disclosure Agreement extends beyond the 6 identified trade secrets.

Second, Neovasc moved to prohibit CardiAQ from presenting or arguing a negative know-

---

[2] Confidential Information is defined in the Non-Disclosure Agreement as "any oral or written information received from the Discloser which is not generally known to the public . . . . Confidential Information includes, by way of example and not limitation, information of a technical sense such as trade secrets; manufacturing processes or devices; current products or products under development; research subjects; methods and results; matters of a business nature such as information about cost, margins, pricing policies, markets, sales, suppliers and customers; product, marketing or strategic plans; financial information; personnel records and other information of a similar nature." [ECF No. 64-2].

how theory of trade secret liability. Even if Neovasc is correct regarding the scope of trade secrets under Massachusetts law, which will be addressed at the charge conference and in the jury instructions, the challenged negative know-how evidence is relevant to other issues in the case beyond the identification of CardiAQ's trade secrets and therefore is admissible. See Wielgus v. Ryobi Techs., Inc., 2012 WL 2277851, at *1 (N.D. Ill. June 18, 2012) ("The purpose of a motion in limine is to prevent the jury from hearing evidence that is clearly inadmissible on all possible grounds.").

Third, Neovasc moved to exclude evidence or argument that the parties expressly entered into a non-competition agreement or legal partnership, and/or had a duty to disclose competitive activities to one another. The Non-Disclosure Agreement unambiguously: (1) forbid Neovasc from using CardiAQ's Confidential Information "for any purpose other than evaluating the proposed business relationship;" and (2) allowed Neovasc to work on a competing product, provided it did not use CardiAQ's Confidential Information.[3] Neither the Non-Disclosure Agreement (expressly governed by Canadian Law) nor the Purchase Orders (also governed by Canadian law[4]) forbid Neovasc from working on a competing product nor created an affirmative duty for Neovasc to disclose its development of a competing device; CardiAQ cannot use the Canadian duty of honesty in contractual performance to read such requirements into the contract. See Bhasin v. Hrynew, 2014 SCC 71, 2014 CSC 71, 2014 CarswellAlta 2046 (Can.) (holding that general duty of honesty

---

[3] This is discussed in more detail in the Memorandum and Order resolving Neovasc's Motion for Partial Summary Judgment. [ECF No. 417].

[4] The Purchase Order does not have a choice-of-law provision, and under Massachusetts' "functional" approach to contractual choice of law issues, Canadian law applies. See Dunfey v. Roger Williams Univ., 824 F. Supp. 18, 20 (D. Mass. 1993). Though CardiAQ was located in Massachusetts when the Purchase Orders were entered, the services and supplies were all performed and provided by Neovasc in British Columbia, and the parties' other contract (the Non-Disclosure Agreement) was expressly governed by the laws of British Columba.

in contractual performance "means simply that parties must not lie or otherwise knowingly mislead each other about matters directly linked to the performance of the contract" and that it "does not impose a duty of loyalty or of disclosure or require a party to forego advantages flowing from the contract."). That being said, CardiAQ still may argue that Neovasc's conduct, as a whole, violated the duty of honesty in contractual performance implied in both contracts.

In addition, under Canadian law, "[t]he parol evidence rule precludes admission of evidence outside the words of the written contract that would add to, subtract from, vary, or contradict a contract that has been wholly reduced to writing." Creston Moly Corp. v. Sattva Capital Corp., 2014 SCC 53, 2014 CarswellBC 2267 (Can.). "To this end, the rule precludes, among other things, evidence of the subjective intentions of the parties." Id. Accordingly, evidence of Mr. Ratz' subjective intentions or understanding is irrelevant to the interpretation of the Non-Disclosure Agreement. Id. Nonetheless, Mr. Ratz' testimony regarding his subjective intentions or expectations may be relevant to other counts, including misappropriation of trade secrets and Chapter 93A, and therefore is not excluded at this time. See e.g., Shealey v. Fed. Ins. Co., 946 F. Supp. 2d 193, 199 (D. Mass. 2012), on reconsideration in part (Apr. 3, 2013) ("Simply put, chapter 93A casts a wider net because it is not constrained by the expectations created by the contract.").

Lastly, the Court denies Neovasc's Motion to Preclude CardiAQ's Experts from Testifying Outside the Scope of their Rule 26(a)(2) Disclosures because the expert statements and opinions at issue were timely disclosed by CardiAQ during the discovery process. Neovasc asserts that two of CardiAQ's expert witnesses, Mr. Ratz and Dr. Bavaria, included opinions in their depositions that were not contained in their written disclosures nor supplemented under Fed. R. Civ. P 26(e)(1)(A). Under Rule 26(e)(1)(A), however, a party who has made a disclosure need only "supplement or correct its disclosure or response . . . if the additional or corrective information has

not otherwise been made known to the other parties during the discovery process or in writing." Thus, "when an expert fully acknowledges a supplemental basis for his opinion during his deposition, there is no need for additional supplementation." Bank of Am., N.A. v. Kansas CVS Pharmacy, LLC, No. 11-2481-JTM, 2014 WL 2217938, at *1 (D. Kan. May 29, 2014); see also Advisory Committee Note Rule 26(e) ("There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process."). Therefore, to the extent Neovasc seeks to exclude opinions expressed by Mr. Ratz and Dr. Bavaria during their depositions, Neovasc's motion is denied.

The discovery schedule did not give CardiAQ an opportunity to submit rebuttal expert reports in response to opinions made by Neovasc's experts. As a result, CardiAQ told Neovasc that Mr. Ratz and Dr. Bavaria had formed additional opinions after reviewing Neovasc's expert reports, and Neovasc had an opportunity to question both Mr. Ratz and Dr. Bavaria regarding these new opinions during their depositions. CardiAQ was not required to make any additional disclosures beyond this; Neovasc had ample opportunity to explore the bases for Mr. Ratz and Dr. Bavaria's opinions. Maga v. Hennessy Indus., No. 12-11423, 2014 U.S. Dist. LEXIS 184327, at *35 (D. Mass. Dec. 1, 2014) ("The purpose of the disclosure requirement is to ensure that the opposing party will have an opportunity to 'explore the basis' for the expert's opinions.").

Neovasc also seeks to preclude Mr. Ratz from testifying consistent with the testimony set forth in paragraphs 6-7, 23, 26, 29, and 32 of his Declaration in Support of CardiAQ's Opposition to Neovasc's Motion for Summary Judgment. [ECF No. 317]. This declaration was filed after fact and expert discovery had ended. Mr. Ratz made the statements in the declaration in his capacity as a fact witness with personal knowledge, and not as an expert. Id. ¶ 1. To the

extent the declaration contains Mr. Ratz' expert opinion, it is consistent with information previously stated by Mr. Ratz at his deposition and included in his expert disclosure. See Maga, 2014 U.S. Dist. LEXIS 184327, at *41 (D. Mass. Dec. 1, 2014) (declining to strike testimony from expert's affidavit because the "paragraphs cited by defendants do not appear to express new information, but instead reiterate information previously stated by [the expert] in his expert report or at the deposition."). Therefore, none of the paragraphs in Mr. Ratz' declaration will be excluded.

**SO ORDERED.**

Dated: April 25, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE