UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEOVASC INC. and NEOVASC TIARA INC., <br><br> Defendants. | Civil Action No. 14-cv-12405-ADB |

**MEMORANDUM AND ORDER**

July 28, 2016

BURROUGHS, D.J.

On May 19, 2016, following a 13-day trial, a jury found defendants Neovasc Inc. and Neovasc Tiara Inc. ("Neovasc") liable to plaintiff CardiAQ Valve Technologies, Inc. ("CardiAQ") for breach of contract and misappropriation of trade secrets. Since then, the parties have filed numerous post-trial motions, including renewed motions for judgment as a matter of law by each party [ECF Nos. 511, 520], motions for a new trial by Neovasc [ECF Nos. 521, 522], and motions for injunctive relief and enhanced damages by CardiAQ [ECF Nos. 513, 516]. This Order resolves the two renewed motions for judgment as a matter of law; the Court will address the remaining motions once they are fully briefed. For the reasons stated below, both renewed motions for judgment as a matter of law are DENIED.

I. **Background**

CardiAQ filed this action on June 6, 2014, asserting claims arising out of the alleged misuse of its confidential information and trade secrets by the defendants. From June 2009 to April 2010, Neovasc worked with CardiAQ to help assemble CardiAQ's transcatheter mitral

valve implant ("TMVI") device. During this time, CardiAQ and Neovasc entered into several purchase orders (the "Purchase Orders"), in which they agreed to the work Neovasc would perform. [See e.g., ECF No. 64, Ex. D].

In October 2009, in the midst of this business relationship, Neovasc began developing its own TMVI device. CardiAQ's complaint alleged that in developing this TMVI device, Neovasc breached the parties' Non-Disclosure Agreement ("NDA") and misappropriated CardiAQ's trade secrets. The complaint further alleged that Neovasc's development of its own TMVI device breached the implied covenant of good faith and fair dealing in both the NDA and the Purchase Orders, violated Mass. Gen. L. Ch. 93A ("Chapter 93A"), and constituted fraud. CardiAQ also brought a claim for correction of inventorship under 35 U.S.C. § 256, requesting that its two co-founders be added as inventors to Neovasc's U.S. Patent No. 8,579,964 (the "'964 Patent").

In an April 25, 2016 opinion, the Court granted Neovasc summary judgment on the fraud claim, finding that CardiAQ had not identified actionable false statements and that Neovasc's failure to disclose its competing product was not fraud. [ECF No. 417]. The remaining claims proceeded to trial, and on May 19, 2016 a jury returned a verdict in favor of CardiAQ for $70,000,000. [ECF No. 483]. Specifically, the jury found that Neovasc (1) breached the NDA; (2) breached the duty of honest performance in the NDA but not the Purchase Orders[1]; and (3) misappropriated three of CardiAQ's six identified trade secrets. Id. The jury awarded CardiAQ zero damages for the contract claims and $70,000,000 for the trade secret claims.[2]

---

[1] Because both the Non-Disclosure Agreement and Purchase Orders are governed by Canadian law, CardiAQ's original claim for breach of the covenant of good faith and fair dealing under Massachusetts law was advanced under the analogous duty of honest performance under Canadian law.

[2] CardiAQ's inventorship claim was not submitted to the jury and will be resolved by this Court after it is fully briefed.

Before the case was submitted to the jury, both parties filed motions for judgment as a matter of law under Fed. R. Civ. P. 50(a). [ECF Nos. 474, 478]. The Court deferred ruling on both motions, and the parties have since filed renewed motions for judgment as a matter of law under Fed. R. Civ. P. 50(b). [ECF Nos. 511, 520]. The renewed motions only challenge the jury's findings on CardiAQ's claims for breach of the duty of honest performance. Neovasc contends that no reasonable jury could find that it breached the duty of honest performance in the NDA while CardiAQ counters that no reasonable jury could find that Neovasc did not breach the duty of honest performance in the Purchase Orders.

## II.   Discussion

The parties' original motions for judgment as a matter of law were brought under Fed. R. Civ. P. 50(a) and their renewed motions under Fed. R. Civ. 50(b). "The standard for granting a Rule 50 motion is stringent. 'Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party.'" Malone v. Lockheed Martin Corp., 610 F.3d 16, 20 (1st Cir. 2010) (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)); see also Crowe v. Bolduc, 334 F.3d 124, 134 (1st Cir. 2003) ("This review [under Fed. R. Civ. P. 50] is weighted toward preservation of the jury verdict, which stands unless the evidence was so strongly and overwhelmingly inconsistent with the verdict that no reasonable jury could have returned it."). A motion for judgment as a matter of law under Fed. R. Civ. P. 50 "may only be granted when, after examining the evidence of record and drawing all reasonable inferences in favor of the non moving party, the record reveals no sufficient evidentiary basis for the verdict." Crowe, 334 F.3d at 134 (quotation marks omitted).

The jury instructions defined the duty of honest performance as follows:

> The duty of honest performance means that neither party may lie or otherwise knowingly mislead the other party about matters linked to the performance of the contract. This does not impose a duty of loyalty or of disclosure or require a party to forego advantages flowing from the contract. It is a simple requirement . . . not to lie or mislead the other party about one's contractual performance.

[ECF No. 488 at 163-164]. This instruction tracked the recent Canadian Supreme Court decision in Bhasin v. Hrynew, which first recognized the duty of honest performance. 2014 SCC 71 (Can. 2014). In Bhasin, the Canadian Supreme Court explained the duty of honest performance as the "simple requirement not to lie or mislead the other party about one's contractual performance." Id. ¶ 73. It "does not impose a duty of loyalty or of disclosure or require a party to forego advantages flowing from the contract," the court explained, but does require that "parties . . . not lie or otherwise knowingly mislead each other about matters directly linked to the performance of the contract." Id.

Applying the stringent standard required under Fed. R. Civ. P. 50, the Court finds that neither party is entitled to judgment as a matter of law. The Court will not disrupt the jury's verdict, which reasonably found that Neovasc breached its duty to honestly perform the NDA but not the Purchase Orders.

First, with respect to the NDA, there was evidence at trial that over the course of the business relationship, Neovasc asked for, received, and used CardiAQ's confidential information after it began to develop a competing product, without taking any steps to segregate its employees from working on the two projects.[3] Under the NDA, the parties agreed that the recipient of "Confidential Information"[4] would not use or disclose such information for "any

---

[3] A more thorough recitation of the facts is included in the Court's previous order granting Neovasc judgment as a matter of law on CardiAQ's Chapter 93A claim. [ECF No. 495].

[4] Confidential Information is defined in the NDA as "any oral or written information received from the Discloser which is not generally known to the public . . . Confidential Information includes, by way of example and not limitation, information of a technical sense such as trade

purpose other than evaluating the proposed business relationship." [ECF No. 64, Ex. B]. They further agreed that the recipient would not "directly or indirectly, disclose any Confidential Information to any third party or use the Confidential Information for its own benefit or for the benefit of any third party." Id. Based on the evidence presented at trial, a jury very reasonably could have found that Neovasc not only breached the NDA, but also failed to honestly perform its obligations as set forth in the NDA. A reasonable jury could have found that Neovasc knowingly misled CardiAQ, by continuing to ask for and receive CardiAQ's confidential information while simultaneously and surreptitiously developing its own competing product. A jury could have also reasonably found that Randy Lane, Neovasc's primary point of contact with CardiAQ and the inventor of the competing TMVI device, intentionally misled CardiAQ into sharing confidential information that would assist Neovasc in its competitive development. Although reasonable minds could perhaps differ on these points, the evidence certainly did not strongly and overwhelmingly compel a different conclusion or establish that the jury's findings were not supported.

Based on these same facts, a reasonable jury could have also concluded that Neovasc did not breach the duty of honest performance in the Purchase Orders. CardiAQ claims that Neovasc breached this duty related to the Purchase Orders by continuing to "actively seek and use CardiAQ's confidential information—through its purchase orders with CardiAQ—while perpetuating CardiAQ's false belief that Neovasc was a benign vendor." [ECF No. 511 at 3]. This argument conflates Neovasc's obligations under the NDA with its obligations under the

---

secrets; manufacturing processes or devices; current products or products under development; research subjects; methods and results; matters of a business nature such as information about cost, margins, pricing policies, markets, sales, suppliers and customers; product, marketing or strategic plans; financial information; personnel records and other information of a similar nature." [ECF No. 64, Ex. B].

Purchase Orders. The one-page Purchase Orders, which set forth the work Neovasc agreed to perform for CardiAQ, were silent with respect to confidentiality and competition, presumably because these issues were covered by the NDA. The duty of honest performance requires dishonesty "as to matters *directly linked* to their obligations under the contract." Zalkow v. Taymor Indus. U.S.A., Inc., No. 2:14-CV-00243 JWS, 2015 WL 2128902, at *4 (D. Ariz. May 5, 2015) (applying Canadian law) (emphasis added). Here, the jury reasonably found that Neovasc did not lie or mislead CardiAQ about matters linked to its obligations under the Purchase Orders. By finding Neovasc liable for breach of the duty of honest performance in the NDA, but not the Purchase Orders, the jury recognized the distinct obligations imposed by the two contracts.

CardiAQ further argues that Neovasc created a conflict of interest as to CardiAQ by developing a competing project, and that this too constituted a breach of the duty of honest performance under the Purchase Orders. Consistent with Canadian Law, however, the jury instructions stated that the duty of honest performance does not impose a duty of loyalty. See Bhasin, 2014 SCC 71, ¶ 73 (noting that the duty of honest performance "does not impose a duty of loyalty or of disclosure or require a party to forego advantages flowing from the contract"). Accordingly, although there was overwhelming evidence that Neovasc began developing, in secret, a competing product while still working for CardiAQ, the jury did not need to find that this conduct constituted a breach of Neovasc's duty to honestly perform its obligations under the Purchase Orders or that Neovasc necessarily lied or misled CardiAQ about its performance of the Purchase Orders.

### III. Conclusion

In sum, at trial, each side put forth plausible evidence and arguments in support of their respective views of what transpired between the parties. Both Neovasc and CardiAQ were very competently represented. The jury verdict, arrived at after a reasonable period of deliberating, reflected an attentive and deliberative process that resulted in a discerning verdict. As an example, the fact that the jury, having found both a contract breach and a theft of trade secrets, awarded all of the damages in one claim and none for the other quite accurately reflected the strength of the damages evidence relative to the two claims. The job of the jury is to decide between competing arguments. In this case, the jury did just that. The fact that one side prevailed on any given argument and the other did not, does not make the jury decision unsupported or unreasonable as contemplated by Fed. R. Civ. P. 50. The jurors did the job they were asked to do and they did it thoughtfully and responsibly. Overturning this verdict would be contrary to the fundamental precepts underlying the jury system and is certainly not required as a matter of fairness or per the terms of Fed. R. Civ. P. 50.

Accordingly, both parties' renewed motions for judgment as a matter of law [ECF Nos. 511, 520] are <u>DENIED</u>. The Clerk of Court is also directed to terminate the pending motions for judgment as a matter of law. [ECF Nos. 474 and 478].

**So Ordered.**

Dated: July 28, 2016

                                                  /s/ Allison D. Burroughs
                                                  ALLISON D. BURROUGHS
                                                  U.S. DISTRICT COURT JUDGE