UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NEOVASC INC. and NEOVASC TIARA INC., <br><br> Defendants. | * * * * * * * * * * * * |

Civil Action No. 14-cv-12405-ADB

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff CardiAQ Valve Technologies, Inc. ("CardiAQ") brought this suit against Defendant Neovasc Inc. ("Neovasc") in June 2014. On May 19, 2016, following a two-week trial, a jury found for CardiAQ as to some, though not all, of its claims, and awarded CardiAQ $70,000,000 in damages for Neovasc's theft of trade secrets. On October 31, in an order resolving several post-trial motions, the Court partially granted CardiAQ's motion for enhanced damages and awarded an additional $21,000,000. [ECF No. 583]. The court also granted in part CardiAQ's motion for injunctive relief and denied Neovasc's motions for a new trial. Judgment was entered on November 21, 2016. [ECF No. 598].

Now before the Court are Neovasc's motion to stay judgment pending appeal [ECF No. 600], Neovasc's motion to stay/preserve the status quo pending resolution of its motion to stay judgment [ECF No. 606], CardiAQ's motions for reconsideration of the denial of the injunction [ECF Nos. 612, 613], and a brief from Neovasc opposing CardiAQ's request for prejudgment interest [ECF No. 610].

For the reasons discussed below, the Court will allow Neovasc to file a reply brief in support of its motion to stay judgment. To provide for time to consider this additional briefing, Neovasc's motion to stay pending the outcome of that decision is granted (except on the correction of inventorship). CardiAQ is granted leave to file a reply brief in support of its request for prejudgment interest directed to the issue of whether the Court continues to have jurisdiction to award prejudgment interest. CardiAQ's motions for reconsideration are denied.

### A.   Motion to Stay Judgment Pending Appeal

#### 1.   Monetary Judgment

Neovasc's motion to stay judgment pending appeal argues that it should not have to post a bond, and claims that the existing asset transfer restrictions in place are sufficient to protect CardiAQ. CardiAQ is correct, however, that the current restrictions, with nothing more, are not sufficient to establish that Neovasc is entitled to a stay pending appeal.

Federal Rule of Civil Procedure 62(d) grants an automatic stay upon the posting of a supersedeas bond. Local Rule 62.2 sets the amount of the bond at the amount of the judgment plus 10% in interest and $500 for costs, "unless the court directs otherwise." The "nature and the amount of the bond is entrusted to the discretion of the trial court." Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 17 (1st Cir. 2002). Courts have generally recognized that an appellant is not automatically entitled to a stay unless the appellant posts a bond for the full amount specified by rule. The First Circuit has held that "no bond is required if: (1) the defendant's ability to pay

is so plain that the posting of a bond would be a waste of money; or (2) the bond would put the defendant's other creditors in undue jeopardy." Acevedo-Garcia, 296 F.3d at 17.[1,2]

Thus, there appears to be a presumption that a stay will not be granted, absent a demonstration of good cause to do so. See Amica Mut. Ins. Co. v. Whois Privacy Prot. Serv., Inc., No. CA 11-0070L, 2013 WL 4008673, at *2 (D.R.I. Aug. 5, 2013) ("'the burden is on the party seeking a waiver [of the bond requirement] to demonstrate that the judgment is not at a risk,' and the 'bond requirement will not be waived solely on the basis that it will pose a severe financial hardship on the appellant unless some other form of security is offered'" (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2905, at 720–23 (3d ed. 2012)); Cipes v. Mikasa, Inc., 404 F. Supp. 2d 367, 369 (D. Mass. 2005) ("Given that the bond requirement is explicitly described in both the federal and local rules, an appellant should, as a general matter, be obliged to satisfy it."); see also Miami Int'l Realty Co. v. Paynter, 807 F.2d 871, 873 (10th Cir. 1986) ("a full supersedeas bond should be the requirement in normal circumstances"); Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755, 760 (D.C. Cir. 1980) (same); Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979) ("If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional

---

[1] Neovasc does not dispute that it does not satisfy the first Acevedo factor. On the second factor, Neovasc argued, in portions under seal, that some *potential* creditors may be *impacted*, but did not demonstrate that any current creditors would suffer "undue jeopardy."

[2] The two Acevedo-Garcia factors are part of a larger five-factor test, the Dillon factors, which the First Circuit has not explicitly adopted. The five Dillon factors are: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position." Cipes v. Mikasa, Inc., 404 F. Supp. 2d 367, 369–70 (D. Mass. 2005).

money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure. It is not the burden of the judgment creditor to initiate contrary proof. Such a supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money.").

In order to obtain a stay without posting a bond, some other form of security is usually required. S.E.C. v. O'Hagan, 901 F. Supp. 1476, 1480 (D. Minn. 1995) (explaining that "[w]hen granting a stay without a supersedeas bond courts generally require the appellant to post partial bond or alternative security," and refusing to grant a stay because defendant claimed he had no assets, and he offered no bond or alternative security). See Bowers v. Baystate Techs., Inc., No. CIV. A. 91-40079-NMG, 2001 WL 640876, at *1 (D. Mass. June 5, 2001) (where defendant was unable to obtain bond for full amount of judgment, Court ruled it had to pledge larger percentage of stock to plaintiff as alternative security); see also FINOVA Capital Corp. v. Richard A. Arledge, Inc., No. 02-1277-PHX-RCB, 2008 WL 828504, at *5 (D. Ariz. Mar. 26, 2008) (allowing defendants to post bond of $228,138 on a $1.66 million judgment); Athridge v. Iglesias, 464 F. Supp. 2d 19, 24–25 (D.D.C. 2006) (allowing defendants to post real estate holdings in lieu of bond); C. Albert Sauter Co. v. Richard S. Sauter Co., 368 F. Supp. 501, 520–21 (E.D. Pa. 1973) (where execution of judgment would bankrupt defendant and it was unable to obtain bond, allowing it to pledge as security all of its stock and stock in other companies, with restrictions on asset transfers).

Neovasc's request for a stay provided financial reasons why it should not be required to post a bond for the full amount of the judgment, and it alleged that no security (beyond the current restrictions on asset transfers) should be required because CardiAQ did not suffer a "real-world" loss. In light of the case law discussed above, these arguments are insufficient to meet

Neovasc's burden of proof to demonstrate that *no* security should be required. Therefore, in order to obtain a stay, Neovasc will be required to post sufficient security to protect CardiAQ's interest in the judgment during the pendency of the appeal. The current restrictions on asset transfers, standing alone, are not enough to secure the more than $90 million that Neovasc owes to CardiAQ.

In its brief, CardiAQ proposed a variety of ways that Neovasc could provide security, including pledging stock in its subsidiaries, giving CardiAQ judicial liens against its real property and intellectual property, allowing additional asset restrictions, and instituting a Mareva-style injunction. Since the burden is on Neovasc to offer adequate security to entitle it to a stay, the Court will allow Neovasc to submit a reply brief setting forth what it will offer as security. The Court notes that CardiAQ's suggestions generally appear reasonable. In addition, Neovasc might consider offering a bond for less than the full amount of the judgment. Neovasc must submit its reply brief detailing the security it can offer (or declining to do so) by December 12, 2016.

### 2. Correction of Inventorship

In addition to the monetary judgment, the Court also ordered that Dr. Quadri and Mr. Ratz be added as inventors of the '964 patent. CardiAQ correctly points out that none of Neovasc's arguments in support of its motion to stay relate to the correction of inventorship. The legal standard to evaluate a motion for a stay of an injunction (which the correction of inventorship is most similar to) is distinct from the test for a stay of monetary relief. Acevedo-Garcia, 296 F.3d at 16. The burden is on Neovasc to demonstrate an entitlement to a stay, and Neovasc has not done so. Furthermore, CardiAQ has explained why it could suffer losses if the

stay is entered. Therefore, Neovasc's motion for a stay will be denied as it relates to the correction of inventorship.

### B.     Prejudgment Interest

Neovasc submitted its brief opposing CardiAQ's request for prejudgment interest on November 23, 2016. [ECF No. 610]. A week later, Neovasc entered its notice of appeal. [ECF No. 621]. While the notice of appeal does not divest the Court of all jurisdiction over the case, see Fed. R. App. P. 4, 7, 8, it is not readily apparent whether the Court maintains jurisdiction to award prejudgment interest. See 16A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 3949.1 (4th ed.) ("[B]ecause prejudgment interest is an element of damages it falls within the scope of an appeal from the final judgment so as to oust district court authority to award such interest"). Therefore, CardiAQ will be allowed to file a reply brief addressing whether the Court maintains jurisdiction to award prejudgment interest by December 12, 2016.

### C.     Reconsideration of Denial of Injunction

CardiAQ has filed two motions requesting reconsideration of the denial of an injunction. The Court does not agree that the new information submitted by Neovasc changes anything in the original reasoning in the denial of the injunction. Therefore, for the reasons set forth in in the Court's October 31, 2016 memorandum and order [ECF No. 583 at 13–20], CardiAQ's motions for reconsideration are denied.

### D.     Conclusion

Accordingly, Neovasc is permitted to file a reply brief in support of its motion to stay judgment pending appeal [ECF No. 600] by December 12, 2016. CardiAQ may file a reply brief in support of its request for prejudgment interest by December 12, 2016. Neovasc's motion to

stay/preserve the status quo pending resolution of its motion to stay judgment [ECF No. 606] is GRANTED, except that the correction of inventorship is not stayed. CardiAQ's motions for reconsideration of the denial of the injunction [ECF Nos. 612, 613] are DENIED.

**SO ORDERED.**

December 2, 2016 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE