UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARDIAQ VALVE TECHNOLOGIES, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 14-cv-12405-ADB |
| NEOVASC INC. and NEOVASC TIARA INC., | * * * | |
| Defendants. | * * | |

# MEMORANDUM AND ORDER
# AWARDING PREJUDGMENT AND POSTJUDGMENT INTEREST

BURROUGHS, D.J.

Plaintiff CardiAQ Valve Technologies, Inc. ("CardiAQ") brought this suit against Defendant Neovasc Inc. ("Neovasc") in June 2014. On May 19, 2016, following a two-week trial, a jury found for CardiAQ as to some, but not all, of its claims, and awarded CardiAQ $70,000,000 in damages for Neovasc's theft of trade secrets. On October 31, in an order resolving several post-trial motions, the Court partially granted CardiAQ's motion for enhanced damages and awarded an additional $21,000,000. [ECF No. 583]. The Court also granted in part CardiAQ's motion for injunctive relief and denied Neovasc's motions for a new trial. Judgment was entered on November 21, 2016. [ECF No. 598]. In order to stay the judgment pending appeal, Neovasc agreed to post a $70 million bond and granted CardiAQ a security interest in its remaining property up to the amount of the judgment. [ECF Nos. 663, 663-1, 668, 668-1].

In its entry of judgment, the Court indicated that CardiAQ appeared to be entitled to prejudgment interest, but allowed the parties to brief the issue, as requested by Neovasc. Following the entry of Neovasc's notice of appeal, the Court also requested briefing concerning

its jurisdiction to award prejudgment interest. [ECF No. 635]. CardiAQ submitted a brief arguing that the Court retains jurisdiction to award prejudgment interest, accompanied by a motion pursuant to Fed. R. Civ. P. 59(e) [ECF Nos. 638, 639], and Neovasc did not dispute the Court's jurisdiction.

Now before the Court is CardiAQ's motion to amend the judgment to include prejudgment and postjudgment interest [ECF No. 639], which Neovasc has opposed [ECF No. 610]. For the reasons set forth below, CardiAQ's motion is allowed, and the judgment is modified to award CardiAQ $20,675,154 in prejudgment interest and $2354.27 per day in postjudgment interest from entry of judgment until judgment is satisfied.

### A.   Prejudgment Interest

Neovasc's argument that CardiAQ is not entitled to prejudgment interest is primarily based on the contention that the jury's award depended on future events and reflected the value of CardiAQ's damages as of February 2015, about eight months after the suit was filed. Prejudgment interest awarded pursuant to Mass. Gen. Laws ch. 231, § 6B is intended to compensate the prevailing party for the loss of use of money while the lawsuit is pending. See Conway v. Electro Switch Corp., 523 N.E.2d 255, 258 (Mass. 1988). In contrast to damages incurred prior to the filing of the lawsuit, courts have generally held that there is no basis to award prejudgment interest on damages that accrue after the suit is commenced. USM Corp. v. Marson Fastener Corp., 467 N.E.2d 1271, 1282 (Mass. 1984); see also Casual Male Retail Grp., Inc. v. Yarbrough, 527 F. Supp. 2d 172, 181 (D. Mass. 2007). Neovasc asserts that prejudgment interest is not appropriate in this case because CardiAQ's expert did not discount the February 2015 royalty calculation to the date the lawsuit began, or to the date of the hypothetical negotiation in March 2010.

Neovasc focuses on the testimony of CardiAQ's damages expert, Michael Wagner, but it has not discussed the jury instructions or the actual damages award. The jury was instructed that if it found for CardiAQ on any of its claims for trade secret misappropriation, it was to determine damages under a reasonable royalty standard. Tr. Day 13, 170:6–8. The Court explained that, under the reasonable royalty standard, the jury had to decide the amount that CardiAQ would have been willing to accept and that Neovasc would have been willing to pay if the parties had engaged in a hypothetical arms-length negotiation for the information *before* the misappropriation occurred. Id. at 170:8–13. The jury was instructed that it could take into account a number of factors to determine this amount, drawn from the decision in Georgia-Pac. Corp. v. U.S. Plywood Corp., 318 F. Supp. 1116, 1121 (S.D.N.Y. 1970). Tr. Day 13, 170:18–171:16. The jury ultimately concluded that CardiAQ should receive $70 million in damages for Neovasc's misappropriation of trade secrets. [ECF No. 483].

Juries are presumed to follow their instructions. CSX Transp., Inc. v. Hensley, 556 U.S. 838, 841 (2009); O'Rourke v. City of Providence, 235 F.3d 713, 733 (1st Cir. 2001). The Court must assume that the jury's award reflects the amount the jury believed that Neovasc would have paid CardiAQ in a hypothetical negotiation that occurred in 2010, well before this lawsuit was filed. Furthermore, the jury's award differed from Mr. Wagner's damages estimate in that Mr. Wagner testified that the February 2015 value of the damages was $90 million, Tr. Day 8, 16:21–17:3, 28:4–16, whereas the jury awarded $70 million. The verdict form did not provide the jury the opportunity to offer any reasoning for its decision, and the Court declines to speculate as to how or why the jury arrived at the damages figure that it did. Thus, regardless of any concern on Neovasc's part as to the discounting applied by Mr. Wagner, that figure was only one piece of evidence that could have informed the jury's decision. The jury concluded that

3

CardiAQ should have received $70 million in 2010, and CardiAQ is therefore entitled to prejudgment interest on that figure.

Neovasc offers two additional arguments against an award of prejudgment interest, neither of which are convincing. First, Neovasc contends that the jury intended its award to provide complete compensation to CardiAQ, and that because CardiAQ did not inform the jury that interest might be added to the verdict later, it is foreclosed from asking for interest now. Neovasc cites no authority indicating that informing the jury of the availability of prejudgment interest is mandatory. Instead, the statute authorizing prejudgment interest contemplates it to be an automatic award which can be added by the clerk of court. See O'Malley v. O'Malley, 645 N.E.2d 684, 686 (Mass. 1995) (prejudgment interest attaches automatically); Mendoza v. Union St. Bus Co., 876 F. Supp. 8, 12 (D. Mass. 1995) ("prejudgment interest under § 6B is to be added ministerially after the verdict"). There may be certain cases that call for an exception to this rule, but the Court does not find that this is such a case. The jury was instructed that the damages award should reflect what Neovasc would have paid in 2010, not what CardiAQ should receive today, and there is no reason to believe the jury strayed from that instruction.

Next, Neovasc contends that an award of prejudgment interest would constitute a windfall. Again, this argument is premised on the idea that the jury's award reflected a 2015 damages calculation, not a 2010 damages calculation, as the jury was instructed. Thus, there is no reason to believe that an award of prejudgment interest would constitute a windfall. Instead, such an award will fulfill the intended purpose of § 6B—to compensate CardiAQ for its inability to use the money that Neovasc should have paid it in 2010.

Therefore, CardiAQ is entitled to $20,675,154 in prejudgment interest. The Court

calculates the award as follows (given that there were 899 days between June 6, 2014 and November 21, 2016, and there are 365.25 days per year): ($70,000,000 * 0.12 * 899) / 365.25 = $20,675,154.

### B. Postjudgment Interest

Neovasc has not disputed CardiAQ's request for postjudgment interest. The Court thus finds that CardiAQ is entitled to postjudgment interest on the $70 million jury verdict, the $21 million in enhanced damages, and the $20,675,154 prejudgment interest award. See Mill Pond Assocs., Inc. v. E & B Giftware, Inc., 751 F. Supp. 299, 303 (D. Mass. 1990) ("The First Circuit clearly rejected the argument that a judgment should be parceled into component parts of which only some of the parts would be entitled to post judgment interest."). The postjudgment interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a). For the week of November 14, 2016, that rate was 0.77%.[1]

Based on a total award of $111,675,154 (jury verdict, enhanced damages, and prejudgment interest), the Court calculates postjudgment interest as follows: ($111,675,154 * 0.0077) / 365.25. Therefore, CardiAQ is entitled to postjudgment interest of $2354.27 per day from entry of judgment on November 21, 2016 until judgment is satisfied.

---

[1] Daily Treasury Yield Curve Rates, U.S. Department of the Treasury, *available at* https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2016 (last visited Jan. 13, 2017).

5

### C.     Conclusion

Accordingly, the motion to amend the judgment [ECF No. 639] is ALLOWED. The judgment is amended to award CardiAQ $20,675,154 in prejudgment interest and $2354.27 per day in postjudgment interest from entry of judgment until judgment is satisfied.

**SO ORDERED.**

January 18, 2017                                                              /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE